Sucesión Cortijo y Andino, demandante y apelante, *v.* Tomás Cruz, conocido por Tomás Cortijo y Cruz, demandado y apelado.

No. 5165.—*Sometido:* Abril 28, 1931. *Resuelto:* Julio 20, 1932.

*Dubón & Ochoteco,* abogados de la apelante; *García Méndez & García Méndez,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

Se trata de un pleito en reivindicación que envuelve la nulidad de una escritura de partición otorgada por Pedro Cortijo y Andino y el demandado en este caso. Los demandantes alegan que el demandado lo es Tomás Cruz, conocido por Tomás Cortijo. Finalmente, la decisión de este caso dependía y depende en gran parte, si no totalmente, de la cuestión de si el demandado era un hijo natural reconocido de Pascual Cortijo y Andino. El demandado mismo es mucho más positivo y sostiene que es hijo natural reconocido de Pascual Cortijo. Pascual Cortijo era hijo de María Matea Andino. Ésta falleció el 15 de noviembre de 1912. Ella otorgó un testamento en que designaba como sus únicos y universales herederos, por partes iguales, a su hijo Pedro Cortijo y a su nieto (*sic*) Tomás Cortijo, a quien correspondía el derecho de representación. La corte inferior resolvió que Tomás, que así se le designaba en el testamento, era hijo natural reconocido de Pascual Cortijo y que en su consecuencia tenía derecho a representar a su padre, toda vez que este último falleció siendo soltero y no dejó otros herederos. En este procedimiento no se ataca directamente el testamento de María Matea Andino, mas sí se impugna la institución de herederos en favor de dicho Tomás Cortijo. La teoría de los demandantes es que la cláusula del testamento designándole como nieto de la testadora debe considerarse como inexistente en vista de las disposiciones del artículo 755 del Código Civil que provee:

"La expresión de una causa falsa de la institución de heredero o del nombramiento de legatario, será considerada como no escrita a no ser que del testamento resulte que el testador no habría hecho tal institución o legado si hubiese conocido la falsedad de la causa.

"La expresión de una causa contraria a derecho, aunque sea verdadera, se tendrá también por no escrita."

La corte inferior resolvió que este precepto de ley no intervenía con la institución de herederos, y que, además, una partición posterior hecha por Pedro Cortijo, hijo de la testadora, y el demandado, equivalía a una confirmación o ratificación de los derechos de dicho Tomás Cortijo y a un impedimento (*estoppel*) contra los herederos de Pedro Cortijo, demandantes en este caso.

El primer señalamiento es que la corte cometió error al decir que el demandado era hijo natural reconocido de Pascual Cortijo. Todas las partes admiten que la ley aplicable al caso de este supuesto hijo natural es la XI de Toro. La corte inferior citó jurisprudencia de la Corte Suprema de España al efecto de que un hijo natural puede adquirir un *status* a virtud de los actos del padre, o de su familia, si estos actos son suficientemente probados.

La prueba en este caso tendió a demostrar que al tiempo de la concepción de Tomás, Pascual Cortijo y Francisca Cruz, madre de Tomás, vivían juntos; que para la época de su nacimiento ellos residían en la casa de María Matea Andino y que allí nació Tomás; que al tiempo de su nacimiento su supuesto padre, o sea Pascual, fué atacado de viruelas a consecuencia de las cuales murió unos veinte días después; que Pascual estaba tan grave que no podía moverse, pero sin embargo, pidió a su madre, la testadora en este caso, que le cuidara a su hijo Tomás. La citada María Matea Andino en realidad se hizo cargo del niño, a quien ella evidentemente prodigaba afecto. Dicho niño vivió con su supuesta abuela natural por espacio de unos veinte años antes del fallecimiento de ella. Hubo un gran cúmulo de prueba tendente a demostrar el derecho de Tomás Cruz a instituir un procedimiento de filiación contra su supuesto padre en vida de éste.

Los apelantes no atacan seriamente la cuestión de que Tomás pudo haber instituído este pleito en vida de su padre, mas hacen hincapié en que no lo hizo y en que, por consi-

guiente, nunca adquirió el *status* que le hubiese dado algún derecho a ser reconocido por una corte o por la sociedad. Los apelantes también sostienen que cualquiera acción que pudiera tener el demandado habría prescrito al tiempo de otorgarse el testamento y que en su consecuencia no existía la posibilidad de que él adquiriera un *status*. Por tanto, alegan los demandantes que el testamento contenía una causa falsa para la designación de Tomás como heredero, y que éste no era tal heredero.

El apelado sostiene, en efecto, que los apelantes tal vez estarían en lo cierto si él estuviera tratando de establecer un *status* mediante un litigio, pero que él no ha instituído ningún procedimiento con tal objeto. Él es el demandado en este caso.

Nos inclinamos a estar de acuerdo con la corte inferior en que Pascual Cortijo en vida reconoció a Tomás como su hijo natural. La prueba directa y circunstancial tiende a probar este hecho. Si bien esta conclusión resolvería el caso, no es necesario que basemos nuestra decisión solamente en este fundamento.

■ Empero, si no surgió tal reconocimiento de Tomás Cruz, no obstante, la prueba indubitada es que él era el hijo natural de Pascual Cortijo y el nieto natural de María Matea Andino. Siendo tal nieto natural, y aun no siéndolo, María Matea Andino tenía derecho a dejarle aquella parte de sus bienes no correspondiente a la legítima de su herencia. Desde luego, si él no era un hijo natural reconocido, las dos terceras partes de la herencia de María Matea Andino correspondían a los demandantes como hijos de Pedro Cortijo, fallecido algún tiempo después de hacerse la partición impugnada en este caso. Los apelantes sostienen que el artículo 755 impediría la existencia de la institución de herederos que el testamento trató de efectuar.

Recurriendo al artículo 755 del Código Civil, somos de opinión que una causa falsa en cualquier cláusula de un testamento no destruirá el efecto de dicha cláusula a no ser que,

conforme se dice en el artículo 755, del testamento mismo resulte que el testador no habría hecho tal legado si hubiese conocido a falsedad de la causa. En otras palabras, normalmente debe hacerse caso omiso de la causa falsa, toda vez que sería raro el caso de que el testamento demostrara que el testador no habría hecho tal institución si hubiese conocido la falsedad de la causa. Lo que aquí decimos es más o menos la opinión de Manresa y de otros comentaristas, según puede verse refiriéndose a 6 Manresa 101 y a 13 Scaevola 383, *et seq.* Sin embargo, Scaevola tiene una idea distinta. El dice más o menos que la intención del testador es aplicable no solamente a la disposición o institución específica hecha, sino también a la causa, y en su consecuencia que la disposición no habría sido hecha a no ser por la causa falsa. Evidentemente, la idea de este comentarista es que la causa falsa podría demostrarse con prueba *aliunde.* Sin embargo, no hallamos razón alguna para desviarnos de la fraseología del artículo 755 mismo. A nuestro entender, tanto la letra como la intención de la ley, son al efecto de que no importa la expresión de una causa falsa a no ser que se desprenda claramente que el testador no habría hecho tal institución. Estamos inclinados a convenir con Ortolan, citado en la página 383 de 13 Scaevola, al decir: "En cuanto a la indicación de la causa, es decir, del motivo que pudo haber conducido o determinado al testador a legar, es absolutamente superfluo; el testador no tiene que dar cuenta a nadie de los motivos que ha tenido para obrar de tal o cual manera e importa poco que sean falsos los que ha expresado."

Es claro, conforme hemos indicado antes, que si el demandado no hubiese sido reconocido o si el testamento mismo no hubiese equivalido a un reconocimiento, entonces María Matea Andino no tenía derecho a dejarle a nadie más de la tercera parte de sus bienes, ya que las dos terceras partes de los mismos pertenecían a su heredero forzoso Pedro Cortijo, padre de los demandantes. Empero, lo que la testadora trató de hacer fué dejarle a su nieto natural la mitad de sus bienes.

Si bien ella no podía dejar la mitad de su herencia, sin embargo, ella podía dejarle la parte de libre disposición, o sea, la tercera parte. De suerte que nos sentimos obligados a resolver que por este testamento por lo menos la tercera parte de los bienes de María Matea Andino pasó a su nieto natural.

Teniendo a lo menos una participación de una tercera parte de la herencia, él y su tío natural, Pedro Cortijo, podían dividirse los bienes entre sí, según lo creyeren prudente. Por tanto, la escritura de partición otorgada por ellos era enteramente válida, aunque Pedro Cortijo recibiera menos de lo que le hubiera correspondido de no haberse efectuado la partición. Bajo estas condiciones, el artículo 1048 del Código Civil, que lee como sigue, ''La partición hecha con uno a quien se creyó heredero sin serlo, será nula,'' no sería aplicable.

Además, aun si el demandado no era un heredero de acuerdo con el testamento, no obstante, en nuestra opinión, él no pretendió ser nada que no era. En el caso de *Arandes* v. *Báez*, 20 D.P.R. 388, resolvimos que la fraseología del artículo 1048 debía ser interpretada en el sentido de significar la falsa representación hecha por una persona de su verdadera personalidad o algo similar, como por ejemplo, cuando una persona alegaba ser hijo de otra y en realidad no era tal hijo. Ese caso fué seguido por el de *Sucn. Dávila et al.* v. *Sucn. Maldonado et al.*, 26 D.P.R. 566.

■ La corte inferior también resolvió, en efecto, que Pedro Cortijo, padre de los demandantes, otorgó esta escritura de partición voluntariamente en unión de Tomás. La prueba circunstancial y directa tendió a demostrar que Pedro Cortijo tenía conocimiento de todos los hechos. No fué debido a un error de hecho que él firmó la escritura de partición con Tomás, sino solamente a un error de derecho, de haberlo. La corte resolvió que sus herederos estarían impedidos de impugnar las actuaciones de él y citó el caso de *Martínez* v. *Registrador de Arecibo*, 27 D.P.R. 841. Preferimos basar nuestra decisión en las anteriores consideraciones más bien que en

este punto de vista, pero la conclusión de la corte inferior no carece de mérito.

*Debe confirmarse la sentencia.*

El Juez Asociado Señor Córdova Dávila no intervino.