Los Hermanos Pedro, María Rafaela y Ramón Rivera Padró, etc., demandantes y recurrentes, *v.* Isabel Rivera Correa y Manuel Francisco Rivera Correa, demandados y recurridos.

*Número:* R-63-253      *Resuelto:* 23 de febrero de 1966

*Isaías M. Crespo,* abogado de los recurrentes; los recurridos no comparecieron.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Hernández Matos, Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ MATOS emitió la opinión del Tribunal.

Se instó este recurso contra fallo de la Sala de Arecibo del Tribunal Superior. Se trata en él de la competencia de los tribunales en la interpretación de cláusulas testamentarias.

El 1 de julio de 1953, en la ciudad de Arecibo, don Pedro Rivera Méndez, de 70 años de edad, agricultor y vecino de Utuado, otorgó testamento abierto ante el Notario Isaías Manuel Crespo. Tenía entonces seis hijos cuyos nombres y apellidos, según revela la prueba documental ofrecida, son: (1) Isabel Rivera, (2) Ramona Rivera Correa, nacida en agosto de 1927; (3) Manuel Francisco Rivera Correa, nacido en agosto de 1931; (4) Pedro Rivera Padró, nacido en noviembre de 1933; (5) María Rafaela Rivera Padró, nacida en setiembre de 1935 y (6) Ramón Eustaquio Rivera Padró, nacido en marzo de 1938.

Dicho testador había contraído primer matrimonio con doña Carmen Olivo Quiñones el 1 de julio de 1919. Enviudó de ella el 27 de febrero de 1929.

Expuso en su testamento que en sus relaciones extramaritales con doña Evangelista Correa Molina, conocida por Lita Correa, desde 1914 hasta 1931, tuvo a sus primeros tres hijos nombrados Isabel, Ramona y Manuel Franciso, Rivera Correa. También que había contraído segundo y último matrimonio con doña Carmen Padró Toledo en el año 1932 y en él procreó a Pedro, María Rafaela y Ramón Eustaquio, Rivera Padró.

Bajo aquel testamento abierto falleció don Pedro Rivera Méndez el 5 de diciembre de 1956. Le sobrevivieron sus mencionados seis hijos, como únicos descendientes, y su segunda esposa Carmen Padró Toledo. Ésta murió el 14 de noviembre de 1959.

El testador en aquel testamento declaró también que era dueño de tres pequeñas parcelas de terreno situadas en el Municipio de Utuado y en sus cláusulas segunda, tercera, cuarta, quinta y sexta dispuso:

"SEGUNDA: Que tiene setenta años de edad y es hijo legítimo de don Ramón Rivera y doña Sebastina Méndez, ambos difuntos, y está casado con doña Carmen Padró, de cuyo matrimonio tiene tres hijos nombrados *Pablo,* de veinte años de edad, *Rafaela* de diez y ocho años de edad, y *Ramón* de diez y seis años de edad, y además tiene tres hijos más nombrados Isabel de treinta años de edad, Ramona de veinticinco años de edad y *Manuel* de veintidós años de edad, habidos en sus relaciones maritales con doña Lita Correa. ................................................................

"TERCERA: Que lega a su esposa Carmen Padró todo el tercio de libre disposición sin limitación alguna. .............................

"CUARTA: Que deja todo el tercio de mejora a sus hijos *Pablo, Rafaela* y *Carmen* habidos en su matrimonio con doña Carmen Padró. ................................................................

"QUINTA: Que lega a favor de su hija Isabel, hija también de la señora Lita Correa una parcela de dos cuerdas de terreno, debiendo dársele dicha parcela juntamente con la que le pertenezca en herencia, y toda vez que dicha legataria está poseyendo actualmente una parcela de terreno igual a CINCO CUERDAS, lindante al Norte, con la Sucesión de Maximino Flores al Oeste, con Gerardo Portalatín y por sus lados Este y Sur, con la finca principal del testador y que probablemente pertenezca a dicha legataria. .............................. TRES CUERDAS de terreno en herencia del testador, así como también el legado de DOS CUERDAS ambas parcelas constituirán la finca de CINCO CUERDAS que actualmente se encuentra poseyendo dicha hija arriba descrita. .............................

"SEXTA: Que en el remanente de sus bienes declara e instituye únicos universales herederos suyos a sus hijos *Pablo, Rafaela* y *Ramón* habidos en su matrimonio con doña Carmen Padró, y a sus hijos Isabel, Ramona y *Manuel,* habidos en sus relaciones maritales con Lita Correa." .............................
(Énfasis suplido.)

En 15 de marzo de 1960 los hijos Pedro, María Rafaela y Ramón Eustaquio, Rivera Padró y Ramona Rivera Correa, presentaron (en un litigio comenzado en noviembre de 1959) una demanda enmendada ante la Sala de Arecibo del Tribunal Superior, sobre "Enmiendas de un Testamento", contra sus hermanos Isabel y Manuel Francisco Rivera Correa.

Luego de exponer lo pertinente del texto del citado testamento abierto y el fallecimiento del testador Don Pedro Rivera Méndez alegaron en ella:

"Que al otorgarse el referido Testamento se cometieron varios errores por aparecer equivocados los nombres de los herederos siendo de utilidad, necesidad y conveniencia para los herederos de dicho causante que el referido Testamento sea enmendado debido a que el heredero Pedro Rivera Padró aparece en el Testamento con el nombre de Pablo, la heredera María Rafaela Rivera Padró aparece en el Testamento con el nombre de Rafaela, el heredero Manuel Francisco Rivera Padró aparece en el Testamento con el nombre de Manuel, el heredero Ramón E. Rivera Padró aparece en el Testamento con el nombre de Ramón. En la Cláusula Cuarta de dicho Testamento aparecen los herederos Pablo, Rafaela y Carmen, en vez de Pedro, María Rafaela y Ramón E. El nombre de la madre de Isabel aparece en el Testamento como Lita Correa en vez de Evangelista Correa, y al enmendarse en la forma que se propone quedarán los nombres de dichos herederos y los de las demás personas relacionadas con ellos con los verdaderos nombres que ostentan."

El 22 de octubre de 1962 contestó Manuel Francisco Rivera Correa la demanda enmendada aceptando todo lo alegado en ella. En mayo de 1963, la codemandada Isabel Rivera Correa, bajo el nombre de "María Isabel Rivera Olivo", contestó la demanda enmendada. Negó todas sus alegaciones y además expuso:

"COMO MATERIA DE DEFENSA.

"La demandada alega:—Que es hija legítima de don Pedro Rivera Méndez y su esposa doña Carmen Olivo Quiñones, y que la demandada María Isabel Olivo, nació el día 5 de enero de 1925 en Lares, Puerto Rico.

"POR LO QUE, respetuosamente solicito del Hon. Tribunal, declare sin lugar la demanda, y en su consecuencia declare que María Isabel Rivera Olivo es hija legítima de don Pedro Rivera Méndez y doña Carmen Olivo; con costas, gastos y honorarios de abogado a la parte demandante."

Pasó el pleito a juicio. La prueba testifical de la parte demandante consistió en los testimonios orales de Pedro y Ramón Rivera Padró, Isabel Rivera Correa y Evangelista Correa Molina. La documental de unas 15 piezas de evidencia, consistentes en varias copias de escrituras públicas, una sentencia en expediente sobre declaratoria de herederos, varias certificaciones del Registro Demográfico y copias de ciertas partidas bautismales. La prueba de la codemandada Isabel Rivera Correa solo consistió en su propia declaración y en copia de la inscripción de su nacimiento como hija de Carmen Olivo Quiñones primera esposa del testador, en 5 de enero del año 1925, con el nombre de "María Isabel Rivera Olivo."

El 27 de setiembre de 1963 el tribunal de instancia dictó sentencia por la cual "declara sin lugar la demanda en este caso con perjuicio." Nada resolvió respecto a la "Materia de Defensa" de la demandada.

Oportunamente solicitó la parte demandante la expedición de un auto de revisión. Lo libramos el 31 de enero de 1964, pero a fin de revisar el fallo recurrido "en lo que respecta a la conclusión filiatoria de la demandada Isabel Rivera Correa." En mayo 28 de 1965 a petición de los recurrentes, ampliamos ". . . . la esfera, alcance y efectos del auto de revisión en el presente recurso a todos los posibles aspectos, puntos y materias revisables de que pueda ser objeto la sentencia final recurrida. . . ." Concedimos a cada parte un término de 30 días para alegatos adicionales y unir a los autos los documentos complementarios que desean ofrecer.

Los demandantes-recurrentes han presentado un extenso y muy bien elaborado alegato en apoyo de su recurso. La parte demandada recurrida no se opuso en forma alguna a la expedición del auto, ni a la ampliación de su ámbito, ni ha radicado alegato contestando el de los recurrentes.

Sostienen los recurrentes que erró el tribunal sentenciador (1) al determinar que carecía de facultad legal para interpretar el texto testamentario a los fines de declarar si

el testador había incidido en error en los nombres de los hijos que designó herederos suyos y en los nombres de las otras personas que en el testamento menciona y (2) al concluir que la señora madre de la hija del testador llamada Isabel era su primera esposa doña Carmen Olivo Quiñones y no doña Evangelista Correa Molina.

A la luz de los hechos estimados probados, de la prueba aportada y de la ley aplicable, y respecto a la acción sobre interpretación del testamento a que solo se refiere el presente recurso, tienen razón los recurrentes. Procede la revocación del fallo recurrido.

1. En la demanda enmendada, en los términos específicos que antes expusimos, se indicaron los varios errores en los nombres de los herederos cometidos en el testamento. Respecto a esos errores, en sus conclusiones de hecho, el tribunal de instancia literalmente consignó:

"El 1 de julio de 1953 Rivera Méndez otorgó testamento y de ese testamento los herederos demandantes solicitan su enmienda para corregir varios errores que se cometieron en el mismo.

"Por la prueba practicada, el Tribunal concluye que en las cláusulas 2da., 4ta., 5ta. y 6ta. dondequiera que se menciona a los hijos del testador en su matrimonio con Carmen Padró, Pablo es la misma persona que Pedro Rivera Padró, Rafaela es la misma persona que María Rafaela Rivera Padró y Ramón es la misma persona que Ramón E. Rivera Padró y Ramón Eustaquio Rivera Padró.

.    .    .    .    . .    .    .    .

En cuanto a Ramona y Manuel, este último es la misma persona que Manuel Francisco Rivera Correa y la madre de éstos es Lita Correa que es la misma persona que Evangelista Correa. En la cláusula tercera, donde dice "Carmen", el testador se refiere a Ramón, que es la misma persona que Ramón E. Rivera Correa y Ramón Eustaquio Rivera Correa."

En las de derecho el tribunal sentenciador, sobre el mismo asunto, también consignó:

"En la presente acción el Tribunal identificó las partes y determinó que en las cláusulas segunda, cuarta, quinta y sexta la persona nombrada como Pablo es la misma persona que Pedro Rivera Padró, hijo del testador en su matrimonio con Carmen Padró; la persona nombrada Rafaela es la misma persona que María Rafaela Rivera Padró, hija del testador en su matrimonio con Carmen Padró y la persona nombrada Ramón es la misma persona que Ramón E. Rivera Padró, conocido por Ramón Eustaquio e hijo del testador en su matrimonio con Carmen Padró. En la cláusula tercera, donde se nombra a Carmen, el testador se refería a Ramón, conocido por Ramón E. y por Ramón Eustaquio de apellidos Rivera Padró.

"Se identificó y determinó, además, que Ramona y el heredero nombrado Manuel, este último es la misma persona que Manuel Francisco Rivera Correa, apellidos éstos de Ramona, son hijos del testador y la persona nombrada Lita Correa que es la misma persona que Evangelista Correa."

Esas determinaciones son concordantes con las suplicadas en la demanda enmendada.([1]) No obstante ello, se declaró el tribunal sin facultad legal alguna para dictar sentencia declarando el verdadero y correcto sentido, significación e inteligencia de las palabras de que se valió el testador para designar erróneamente los nombres de sus herederos. Sobre este punto dijo:

---

([1]) Disponen los Arts. 701 y 702 del Código Civil (31 L.P.R.A. secs. 2290 y 2291).

§ 2290. Cómo el testador designará al heredero

"El testador designará al heredero por su nombre y apellido; cuando haya dos que los tengan iguales, deberá señalar alguna circunstancia por la que se conozca al instituido.

"Aunque el testador haya omitido el nombre del heredero, si lo designare de modo que no pueda dudarse quién sea el instituido, valdrá la institución.—Código Civil, 1930, art. 701."

§ 2291. Errores en el nombre o en las cualidades; imposibilidad de identificación

"El error en el nombre, apellido o cualidades del heredero, no vicia la institución cuando de otra manera puede saberse ciertamente cuál sea la persona nombrada.

"Si entre personas del mismo nombre y apellido hay igualdad de circunstancias, y éstas son tales que no permiten distinguir al instituido, ninguno será heredero.—Código Civil, 1930, art. 702."

"El testamento es un acto personalísimo: no podrá dejarse su formación en todo ni en parte al arbitrio de un tercero, ni hacerse por medio de comisario o mandatario. Así reza el primer párrafo del Artículo 619 del Código Civil de Puerto Rico, ed. 1930 (31 L.P.R.A. 2124).

"Los herederos demandantes no pueden pedir ahora que se entienda enmendado este testamento, sin embargo, el segundo párrafo del Artículo 701 y el párrafo primero del 702 del Código Civil descrito (31 L.P.R.A. 2290, 2291) disponen que aunque el testador haya omitido el nombre del heredero, si lo designase de modo que no pueda dudarse quien sea el instituido, valdrá la institución; el error en el nombre, apellido o cualidades del heredero, no vicia la institución cuando de otra manera puede saberse ciertamente cuál sea la persona nombrada."

Lo pedido por los herederos afectados no es contrario al principio de que el testamento es un acto personalísimo y su formación en todo ni en parte no puede dejarse al arbitrio de un tercero, ni hacerse por medio de comisario o mandatario, consagrado por el Art. 619 de nuestro Código Civil. Existiendo una heredera que se negaba o se oponía a que el testamento fuese interpretado en esa forma, invocaron la incuestionable facultad del Tribunal Superior en materia de interpretación de testamentos y demás figuras regidas por nuestro Derecho de sucesiones.

No siempre las manifestaciones o expresiones de última voluntad se producen en forma tan perfecta y completa que no den lugar a dudas. Al igual que las disposiciones legislativas, necesitan, para su correcta ejecución, en casos de duda, error, obscuridad e incertidumbre, ser interpretadas. Para ello dispone nuestro Código Civil una regla general en su Art. 624 y de varias especiales en sus Arts. 619, 624, 678, 680, 694, 698, 700, 701, 702, 720 y 721 entre otros.

La doctrina afirma que las normas de interpretación de los preceptos de ley y de los contratos son de aplicación analógica en la interpretación de testamentos. Pero en la escala de valor de las normas figuran en primer término las generales o específicas sobre testamentos.

■ Repetidamente hemos resuelto que compete a los tribunales de justicia la misión de interpretar las disposiciones testamentarias en casos de controversia entre los herederos sobre sus alcances e inteligencia. *Luce & Co.* v. *Cianchini*, 76 D.P.R. 165, 171 (1954); *Junghanns* v. *Cornell University*, 71 D.P.R. 673, 682 (1950); *Colmenero* v. *Fernández*, 63 D.P.R. 919, 922 (1944); *Sucn. Cortijo* v. *Cruz*, 43 D.P.R. 839 (1932).

■ En *Ortiz* v. *Bermúdez*, 70 D.P.R. 707, 714 (1949) se había designado en un testamento heredero a una persona llamada correctamente Pedro Ortiz Torres con el nombre de Pedro Ortiz Flores. Se alegaba en el recurso que ello anulaba la institución de heredero hecha a su favor. Resolvimos, apoyándonos en el Art. 702 citado que tal error no lo anulaba y que era "innegable que, aunque se cometió un error al designar el segundo apellido de este heredero, se sabía a ciencia cierta cuál era persona nombrada." Situación idéntica nos presenta el caso que ahora resolvemos.

■ Desde el año 1931 hemos contado con un estatuto sobre sentencias declaratorias—Ley Núm. 47 de 1931—que, a instancias de toda persona interesada en un testamento, concede al Tribunal Superior amplias facultades para declarar derechos, estados y otras relaciones jurídicas, aunque se inste o pueda instarse otro remedio. Con arreglo a sus disposiciones se puede obtener la determinación de cualquier divergencia acerca de la interpretación o validez de cualquier testamento. (²)

---

(²) La Sec. 4 de esta Ley dispone:

§ 2994. Albacea, etc.

"Los albaceas, administradores judiciales, fideicomisarios, tutores, acreedores, legatarios, herederos, causahabientes o *cestuis que trust*, actuando en esas capacidades, o en representación de otras personas interesadas, podrán pedir y obtener una declaración de derechos o de relaciones jurídicas, en todos los casos en que se administren fideicomisos, bienes de difuntos, menores, incapacitados o insolventes;

(a) Para determinar sobre clases de acreedores, legatarios, herederos, causahabientes u otros; o

■ La interpretación de testamentos consiste en una operación intelectual cuya finalidad es la indagación de la voluntad del testador, aclarando y determinando el sentido efectivo de sus expresiones, y, si es preciso, llenando las lagunas de sus declaraciones. Véase *Diccionario de Derecho Privado*, De Casso y Cervera.

2. Trataremos ahora del último error, pero solo en cuanto su consideración se relacione o afecte la única cuestión objeto de este recurso que debemos resolver: la interpretación testamentaria.

Interpretó así el tribunal de instancia las manifestaciones del testador alusivas a su hija Isabel Rivera: "Dondequiera que se nombra Isabel, de treinta años de edad, como hija de Lita—nombre familiar de Evangelista Correa Molina—esa es la misma persona que María Isabel Rivera Olivo, hija de Carmen Olivo, primera esposa del testador." Pero, en sus Conclusiones de Derecho consignó: *"Esta identificación es contraria al contenido del testamento ya que en el mismo se alega que María Isabel es hija de las relaciones del testador con Evangelista Correa, conocida por Lita."* (Énfasis suplido.)

La evidencia documental que esa heredera Isabel ofreció y fue admitida para probar que era hija de Carmen Olivo Quiñones, consistió en un certificado de acta de nacimiento librado por la oficina en Lares del Registro Demográfico. Del mismo resulta que en esa oficina se practicó el 19 de febrero de 1925, la inscripción del nacimiento en 5 de enero de 1925 de una persona llamada "María Isabel Rivera Olivo," como hija de Pedro Rivera Méndez, natural de Lares, y de

(b) Para ordenar a los albaceas, administradores o fideicomisarios que ejecuten o se abstengan de ejecutar cualquier acto determinado en su capacidad fiduciaria o

(c) Para determinar sobre cualquier cuestión que surja en la administración de los bienes o del fideicomiso, incluyendo las de interpretación de testamentos y otros documentos.—Abril 25, 1931, Núm. 47, p. 379, sec. 4, ef. 90 días después de Abril 25, 1931."

Carmen Olivo Quiñones, natural de Utuado. Al prestar ella declaración manifestó que sabía que doña Carmen era su madre porque así se lo había dicho.

■ El valor de ese certificado a los propósitos de interpretar el testamento quedó, a juicio nuestro, plenamente destruido por la copiosa evidencia documental de los siguientes actos, hechos y eventos, realizados u ocurridos desde el 1914 hasta el momento de otorgarse el testamento:

A.—*Actos de la que alega ser su madre natural biológica, Evangelista Correa Molina:* Esta declaró que: sostuvo relaciones maritales en el barrio Angeles de Utuado, con Pedro Rivera Méndez, desde el año 1914 hasta el mes de julio de 1919, siendo ambos solteros; que de esas relaciones nació Isabel el 21 de junio de 1915; el 28 de noviembre de 1915 ambos la bautizan en la Iglesia Católica de Utuado, con ese nombre; el día 1 de julio de 1919, teniendo la niña Isabel unos tres años y medio de edad, contrae primer matrimonio su padre Pedro Rivera Méndez con doña Carmen Olivo Quiñones; que esto motivó que ella, Evangelista Correa Molina, se ausentara del barrio Angeles y se fuera a vivir a Arecibo, llevando entonces Rivera Méndez su niña Isabel a convivir con su esposa doña Carmen; que a los diez años de edad la inscriben en el Registro Civil como si fuera hija de ambos esposos; que la crió doña Carmen. Dijo que en 1926 regresó al mismo barrio Angeles, reanudó sus relaciones con Rivera Méndez, procreando a Ramona y Manuel Francisco, Rivera Correa. (3)

----

(3) En varias ocasiones esta señora manifestó que había dado a luz a Isabel, aunque ella no la había criado. (T.E. págs. 36, 37, 38, 39, 42, 43, 46.) La parte de su testimonio que se repitió varias veces es así:
"P. ¿Su nombre?
"R. Evangelista Correa Molina.
"P. ¿Usted tiene hijos?
"R. Tengo hijos.
"P. ¿Cómo se llaman?
"R. Héctor Manuel Rivera, Ramona Rivera e Isabel Rivera, pero que es hija mía. La parí yo, pero no la crié yo.

B.—*Actos de su padre:* (1) Don Pedro Rivera Méndez, con motivo del fallecimiento de su primera esposa doña Carmen Olivo Quiñones, tramitó como peticionario, ante la extinta Corte de Distrito de Arecibo, un expediente sobre declaratoria de sus herederos.

En el escrito inicial, bajo juramento, expuso que su esposa no había dejado descendiente legítimo ni natural, ni ascen-

---

"P. ¿Usted parió a Isabel?

"R. Sí, señor.

"P. ¿El padre de Isabel quién es?

"R. Pedro Rivera Méndez.

"P. ¿El vive?

"R. Murió.

"P. ¿Usted estaba casada con él?

"R. No, señor. No estaba casada.

"P. ¿Usted sabe si él estaba casado?

"R. Sí, señor.

"P. ¿Con otra mujer?

"R. Sí, señor.

"P. ¿Con quién?

"R. Con Carmela Olivo.

"P. ¿Carmela Olivo vive?

"R. Murió.

"P. ¿Carmela Olivo tuvo algún hijo?

"R. No tuvo hijos. La única hija fue a Isabel, que la crió ella.

"P. ¿Cuando usted tenía relaciones maritales con Pedro, don Pedro estaba ya casado con Carmela Olivo?

"R. Sí, señor.

"P. Esta señora que está allí, señalándole a la demandada sin decir su nombre, quién es esta señora?

"R. Esta señora es Isabel Rivera Olivo.

"P. ¿Por qué dice que es Isabel Rivera Olivo?

"R. Porque ya le digo, yo la parí, pero no la crié. La madre es quien cría.

"P. ¿Qué convino usted con don Pedro?

"Abogado Sr. Susoni: Es sugestiva.

"Abogado Sr. Crespo: La retiramos.

"P. ¿Cómo fue que Isabel vino a vivir con doña Carmen Olivo?

"R. Ella vino pequeña, que no sabía hablar todavía.

"P. ¿De qué manera fue que ella fue a vivir, si usted sabe, con doña Carmen Olivo?

"R. Porque el papá de ella me la quitó siendo pequeñita y se la llevó a la señora.

"P. ¿A doña Carmen Olivo?

"R. Sí, señor."

dientes, "siendo las únicas personas con derecho a su herencia sus hermanas María de los Dolores y Bárbara Fundadora Olivo Quiñones, no habiendo dejado ninguna otra persona que le pueda suceder como colateral. . . .", y solicitó que sus citadas cuñadas fueran declaradas únicas herederas de su difunta esposa en unión a él en la cuota de ley. Así lo declaró aquella corte por sentencia del 21 de octubre de 1938. Para nada en ese expediente mencionó a María Isabel Rivera Olivo supuesta hija de la causante.

(2) Por escritura pública otorgada el 20 de julio de 1929 ante el notario José D. Rodríguez, en Lares, Pedro Rivera Méndez hace constar: "Que doña Carmen falleció sin haber otorgado testamento no dejando descendientes ni ascendientes que la heredasen, por lo que la herencia corresponde a los colaterales de dicha causante. . . ." Por esa misma escritura esas hermanas de su mujer le vendieron sus derechos y acciones hereditarias.

(3) El 1 de noviembre de 1943, Pedro Rivera Méndez por sí y como único cesionario entonces de los bienes dejados por su finada esposa ratifica cierta venta que en vida de ésta había hecho a favor de José Martes Soto.

(4) Pedro Rivera Méndez, por escritura pública Núm. 54 otorgada el 4 de agosto de 1959, en la ciudad de Arecibo, ante el Notario Isaías M. Crespo, en que también personalmente concurrieron como otorgantes la codemandada "María Isabel Rivera" y su madre Evangelista Correa, entre otras cosas, hizo constar: ". . .que la compareciente doña María Isabel Rivera es hija de él y de sus relaciones con doña Evangelista Correa."

(5) Pedro Rivera Méndez en su citado testamento hizo constar ". . . y además tiene tres hijos más nombrados Isabel de treinta años de edad, Ramona de veinticinco años de edad y Manuel de veintidós años de edad, habidos en sus relaciones maritales con doña Lita Correa." La cláusula

Quinta, por medio de la cual el testador deja un legado a Isabel, comienza así: "QUINTA: Que lega a favor de su hija Isabel, hija también de la señora Lita Correa una parcela de cuerdas . . . ." Por la cláusula Sexta, en el remanente de sus bienes instituyó "universales herederos suyos a sus hijos. . . y a sus hijos Isabel, Ramona y Manuel, habidos en sus relaciones maritales con Lita Correa."

C.—*Actos de la propia Isabel Rivera Correa, en unión a sus alegados padres biológicos:* La citada escritura público Núm. 54 del 4 de agosto de 1950, otorgada en Arecibo, por la propia María Isabel Rivera, entonces casada y de 35 años de edad—transcurridos ya unos doce años de la declaración de herederos en favor de las hermanas de doña Carmen Olivo Quiñones, y veintiuno de la compra a ellas por Pedro Rivera Méndez de todos los bienes dejados por doña Carmen—en concurrencia con sus padres biológicos y don José Martes Soto, parece otorgada para disipar todo vestigio de dudas sobre quién era la madre de Isabel, ya que, si en verdad lo hubiera sido doña Carmen, el título de Martes Soto sobre la totalidad de la finca que había comprado verbalmente a los esposos Rivera-Olivo, hubiera resultado viciado en parte.

Luego de hacer relación en esa escritura pública de 1950 a la antigua venta oral a favor de Martes Soto y a su ratificación por don Pedro en 1943, los otorgantes hicieron constar:

"PRIMERA: DON PEDRO RIVERA MÉNDEZ ratifica todo lo contenido en la escritura ante mi de fecha primero de noviembre de mil novecientos cuarentitrés, haciendo constar al mismo tiempo que la compareciente doña María Isabel Rivera es hija de él y de sus relaciones con doña Evangelista Correa. Y asimismo dicho señor renuncia a favor de don José Martes Soto a los derechos que comprara a doña María de los Dolores y doña Bárbara Fundadora Olivo Quiñones, en escritura de veinte de julio de mil novecientes veintinueve ante el Notario José D. Rodríguez, en cuanto dichos derechos forman parte de la finca descrita precedentemente y asimismo renuncia dicho señor a favor del señor don Martes Soto al derecho de usufructo vidual que le pertenece en dicha finca. ................................................

"SEGUNDA: *Doña María Isabel Rivera y doña Evangelista Correa declaran que la primera es hija de la segunda, pero comoquiera que la primera aparece inscrita en el Registro Civil como hija de don Pedro Rivera Méndez y de su difunta esposa doña Carmen Olivo, dicha compareciente doña María Isabel Rivera renuncia a cualquier derecho que crea tener sobre la finca precedentemente descrita en esta escritura, a favor de DON JOSE MARTES SOTO, cuya renuncia efectúa en consideración al afecto que tiene a su padre y al hecho de que se considera ser hija de su propia madre doña Evangelista Correa, y no de doña Carmen Olivo Quiñones, como aparece en el Registro Civil.*".......... (Énfasis suplido.)*

D.—*Ramona Rivera Correa*, doble hermana de Isabel, alegó tanto en la demanda original como en la enmendada que su hermana Isabel era hija de Evangelista Correa Molina.

E.—*Manuel Francisco Correa*, el otro doble hermano de Isabel, a quien también se hizo parte codemandada, al contestar por su propio derecho, desde la ciudad de Nueva York, la demanda enmendada, bajo juramento hizo constar:

"1— . . . que mi padre dejó un testamento que requiere que se hagan las enmiendas alegadas en dicha Demanda enmendada.

"2.—Que mis hermanas Isabel y Ramona Rivera Correa y yo somos hijos de Pedro Rivera Méndez y de Evangelista Correa pero mi referida hermana Isabel Correa aparece inscrita como hija de mi referido padre y de Carmen Olivo debido a un error."

La preponderancia de la prueba respecto al punto de la maternidad aludida en el testamento apoyaba las manifestaciones del testador en el sentido de que Isabel era hija de él y de Lita Correa. No fue racional, ni justiciero, ni jurídico que se atribuyera el siguiente sentido o significado a las expresiones del testador: "Dondequiera que se nombre Isabel. . . como hija de Lita es la misma persona que María Isabel Rivera Olivo, hija de Carmen Olivo, primera esposa del testador." Esto, como dijo el propio tribunal de instancia, contradecía el testamento. Es la sustitución de expresiones consignadas por otras nuevas.

La conducta del padre desde el 1925 hasta el 1953, las manifestaciones incontradichas de la alegada madre Evangelista Correa Molina, y la tajante confesión de la propia Isabel Rivera, perpetuada notarialmente el 4 de agosto de 1950, en el sentido de que ella era hija de Evangelista Correa y no de Carmen Olivo, no debieron ser ignoradas en la hora crucial de las conclusiones sobre las expresiones testamentarias bajo interpretación.

Vemos que respecto a Isabel, existen reconocimientos contradictorios e irreconciliables sobre su maternidad. De ser cierto el contenido del acta del Registro Civil de Lares del año 1925, ella es hija de Carmen Olivo Quiñones. Si, por el contrario, lo es el de la partida de bautismo de 1915, el contenido de la sentencia sobre declaratoria de herederos de doña Carmen, el contenido de la escritura de 1950, otorgada por la misma Isabel, don Pedro y Evangelista, y el contenido del testamento, entonces su madre es Evangelista Correa Molina.

Pero a tales reconocimientos contradictorios, en lo que atañe a la acción ejercitada, sólo se le puede atribuir la eficacia de elementos o factores de hermenéutica en la solución del problema interpretativo del testamento de Pedro Rivera Méndez, en el que únicamente están interesados sus seis hijos, como hijos de él. Ningún interés patrimonial tienen en esa herencia los sucesores de Carmen Olivo Quiñones.

■ La pretensión reconvencional de Isabel Rivera contenida en su contestación para que se declarara en esa acción, sin ulteriores requisitos procesales, "que María Isabel Rivera es hija legítima de don Pedro Rivera Méndez y doña Carmen Olivo. . .", constituía, además de una reclamación de un *status* familiar, un ataque colateral a la validez de la sentencia declarando que doña Carmen no había dejado descendientes ni ascendientes algunos y que únicas y universales herederas y sucesoras lo eran sus dos hermanas, que fue inscrita en el Registro de la Propiedad; es también un ataque

colateral a la venta que ellas hicieron de los derechos y acciones que adquirieron de aquella causante, todo ello sin haberse demandado, o traído a juicio en cualquier forma, a aquellas herederas o a quienes las hubieran sucedido. Estas hermanas legalmente nunca se desprendieron, ni podían desprenderse, de su *status* de herederas.

■ Cuando una persona puede gozar de un *status* familiar (que reviste caracteres de indivisible, inalienable y de imprescriptible) ningún testador puede privarla de ese derecho; sus declaraciones testamentarias en tal sentido no tienen más fuerza que una manifestación del testador. Véase *Gastón* v. *Herederos de Franceschi*, 43 D.P.R. 308, 310 (1932); Sentencia de 27 de junio de 1950, Tribunal Supremo de España, Tomo XXXI, Jurisprudencia Civil, Nueva Serie, pág. 533.

Hizo bien el tribunal sentenciador en no incluir en su fallo pronunciamiento alguno sobre aquella mera pretensión reconvencional.

*Deberá revocarse la sentencia recurrida y en su lugar devolver el caso a la Sala de Arecibo del Tribunal Superior, para que dicte sentencia de conformidad con la súplica de la demanda enmendada y la presente opinión.*