# 2006 DTA 24

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**REGIÓN JUDICIAL DE GUAYAMA**
**PANEL XI**

FERNANDO QUIÑONES HERNÁNDEZ, CARMEN DELIA QUIÑONES HERNÁNDEZ, JUAN QUIÑONES HERNÁNDEZ, JAIME M. QUIÑONES HERNÁNDEZ, ROSALINA QUIÑONES HERNÁNDEZ, ÁNGELA QUIÑONES HERNÁNDEZ, NOELIA QUIÑONES HERNÁNDEZ, JUAN ROSADO QUIÑONES, ÁNGELA ROSADO QUIÑONES, HERLINA ROSADO QUIÑONES, CARMELA ROSADO QUIÑONES, MIGUEL ÁNGEL ROSADO QUIÑONES, BENJAMÍN TORRES QUIÑONES, GLORIA TORRES QUIÑONES, PURIFICACIÓN QUIÑONES RIVERA, JOSÉ JUAN RIVERA QUIÑONES, EVANGELIO TORRES, VIRGINIA APONTE QUIÑONES, MARÍA ISABEL GONZÁLEZ QUIÑONES, JUANITA GONZÁLEZ QUIÑONES, ANA MARÍA GONZÁLEZ QUIÑONES, INÉS GONZÁLEZ QUIÑONES, ÁNGEL MIGUEL APONTE QUIÑONES, ELISA GONZÁLEZ QUIÑONES, DAVID GONZÁLEZ QUIÑONES, EVANGELIA TORRES, MARGARITA GONZÁLEZ QUIÑONES, RAFAEL GONZÁLEZ QUIÑONES, LIZ SELENIA PÉREZ QUIÑONES, CARMEN SOCORRO GONZÁLEZ QUIÑONES, RAFAEL QUIÑONES
Demandantes-Apelantes

v.

CARMEN QUIÑONES RIVERA
Demandada-Apelada

Núm. KLAN-05-01051

San Juan, Puerto Rico, a 6 de diciembre de 2005

Panel integrado por su Presidenta, la Juez Pesante Martínez, y los Jueces Feliciano Acevedo y Salas Soler

Salas Soler, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Ante el Foro, comparecen los apelantes mediante el correspondiente escrito de apelación. Estos solicitan en su escrito la revisión y revocación de cierta Sentencia decretada por el Hon. Eduardo Grau Acosta, Juez del Tribunal de Primera Instancia (TPI), Sala Superior de Guayama. En dicha sentencia, el TPI ofreció su interpretación de lo dispuesto en el testamento del finado, Horacio Quiñones Rivera. Lo anterior, con el efecto práctico de dar por establecido que aquél instituyó a la parte apelada como heredera universal de todos sus haberes. Además, el TPI condenó a los apelantes al pago de $1,000.00 por concepto de honorarios en el entendido de que habían incurrido en conducta temeraria.

Inconformes con tales determinaciones, acuden los apelantes, levantando contra el TPI, en síntesis, los siguientes señalamientos de error: primero, que erró en su interpretación de las disposiciones testamentarias contenidas en el testamento ológrafo del fenecido Horacio Quiñones Rivera; y segundo, por condenarles al pago de honorarios cuando a su juicio no ha mediado temeridad de su parte.

Luego de haber realizado un examen detallado y ponderado de los argumentos esgrimidos por las partes involucradas, junto con los documentos que anejaron a sus respectivos alegatos, y examinada la exposición narrativa de la prueba aprobada por el hermano foro de Instancia el 22 de noviembre de 2005, concluimos que estamos en posición de resolver la controversia.

### I

Comenzamos por realizar una breve relación de las incidencias procesales y de las circunstancias fácticas de mayor relevancia a esta controversia.

El Sr. Horacio Quiñones Rivera falleció el 24 de enero de 2001. Con su muerte, no dejó ni descendientes, ascendientes o viuda. No obstante lo anterior, sí le sobrevivieron algunos hermanos y sobrinos. Agréguese el hecho de que el finado redactó un testamento ológrafo en el cual dispuso lo siguiente:

*"Testamento Orográfico. A los 5 días del mes de enero de 2001, yo Horacio Quiñones Rivera de 66 años de edad declaro:*

*Que es mi plena voluntad que al morir mis bienes muebles e inmuebles cita Urb. Jardines de ARROYO Calle Q P-21 pasen a la patria potestad de mi hermana Carmen Quiñones Rivera.*

*Dicha finca está suscrita al folio 169 del tomo 67 de Arroyo con el #1964 mediante escritura otorgada el 23 de diciembre de 1983 en el Registro de la Propiedad de PR, Sala de Guayama.*

*En el pleno uso de mis facultades mentales le doy validez con mi firma a este documento.*

*(Firmado) Horacio Quiñones Rivera"*

Los apelantes presentaron su Demanda en contra de la parte apelada Carmen Quiñones Rivera. En lo que atañe a la relación de todos ellos con el finado, huelga indicar que aquél fue hermano de la parte apelada, así como hermano de unos y tío de otros de los apelantes. Los apelantes presentaron su demanda con el fin de que se interpretaran las disposiciones testamentarias del finado. Tanto en su demanda, como en escritos subsiguientes, han sostenido en resumen, que las disposiciones testamentarias del finado Horacio Quiñones, deben leerse de modo tal que se entienda que el llamamiento a Carmen Quiñones fue al sólo efecto de recibir, a título de legado, no la nuda propiedad sino el derecho al uso y disfrute del inmueble al que se hace referencia en el testamento junto con los muebles que allí se encontraran.

En cuanto a la contención de los apelantes, es menester señalar que éstos han argüido que la palabra mueble en el testamento ha de interpretarse en la acepción de mobiliario, a saber, mesas, sillas, etc. Han indicado, además, que nada en el testamento sugiere que fuera la voluntad del testador dejarle a la parte apelada como herencia, en cuanto a sus bienes muebles, cierta suma de dinero, ascendiente a más de doscientos mil dólares, que está depositada en una cuenta bancaria. A juicio de los apelantes, no debe entenderse que fue la voluntad del testador dejar a la apelada el dinero contenido en su cuenta bancaria en vista de que, a diferencia de como hizo con el inmueble aludido antes, sobre el cual incluso incluyó su información registral, sobre lo primero no incluyó la información detallada sobre ese concepto particular en el testamento.

Entre las incidencias procesales más relevantes a la controversia de autos, precisa señalar que este Foro ya ha tenido la oportunidad, en dos ocasiones, de dirimir cuestiones relacionadas al pleito. En la primera, se denegó la expedición del auto de *certiorari* que presentara la parte aquí apelada solicitando la revisión de la denegatoria que decretara el TPI en cuanto a la imposición de una fianza de no residentes a algunos de los hoy apelantes así como de una fianza por embargo en aseguramiento de sentencia. Además, se solicitó la revisión de la denegatoria de una solicitud de sentencia sumaria que presentara la hoy parte apelada. En la segunda instancia, también denegamos la expedición del auto de *certiorari* que en esa ocasión presentaran los hoy apelantes. Lo anterior, con el efecto de no dar lugar a la solicitud de revisión de la determinación del TPI que permitió a la parte aquí apelada cursar cierto pliego de interrogatorios pasado determinado tiempo después de presentada la contestación a la demanda. No obstante lo anterior, en esta ocasión nos expresaremos propiamente sobre los méritos de la controversia.

Como anticipamos, el TPI dictó sentencia en la cual tomó cuenta de los siguientes hechos: (1) que el testamento en controversia fue otorgado por Horacio Quiñones Rivera, quien era hermano de la apelada, y además, hermano y tío de los apelantes respectivamente; (2) que falleció en la fecha señalada sin ascendientes, descendientes o viuda; (3) que en el testamento no se hace mención de los apelantes (en particular o colectivamente); (4) que el testamento fue debidamente adverado y protocolizado; y (5) que a diferencia de los apelantes, la apelada se encargó de visitar y cuidar al finado, en su totalidad, durante el tiempo en que el finado estuvo sumido en su última enfermedad hasta que le llegó la muerte.

En lo que respecta a la prueba testifical, el TPI tomó cuenta de las declaraciones que fueran aportadas en relación al quinto punto detallado antes, las cuales no fueron refutadas por los apelantes. Igualmente, se tomó cuenta del hecho de que el finado se mantuvo en pleno conocimiento mientras estuvo enfermo. No sólo ello, sino que también se determinó, conforme a la prueba testifical presentada, que el finado escribió de su puño y letra el testamento en controversia; que lo entregó a la apelada con instrucciones de que aquélla lo entregara a un abogado luego de él fallecer; y por último, que la apelada no sólo desconocía del contenido y la naturaleza del escrito que recibió del finado (que luego de la adveración fue reconocido como el testamento ológrafo del finado), sino que no intervino, ni en forma alguna, instruyó a su hermano para que redactara de una u otra forma el contenido del

testamento en cuestión. Añádase que el TPI expresó en su determinación que el testimonio de la parte apelada le mereció entera credibilidad, y además destacó el hecho de que los apelantes no presentaron el testimonio de los testigos que habían anunciado en su Informe de Conferencia con Antelación a Juicio. (Sentencia del TPI, en la pág. 6).

Por otro lado, basándose en el derecho aplicable, el TPI concluyó que al no tener herederos forzosos, el testador podía disponer por testamento de todos o parte de sus bienes a favor de cualquier persona que tuviera capacidad para adquirirlos. (Sentencia del TPI, en la pág. 5). También, indicó que el finado y testador Horacio Quiñones Rivera instituyó como heredera a su hermana, la apelada Carmen Quiñones Rivera, para que le sucediera a título universal. (Sentencia del TPI, en la pág. 6). El TPI concluyó además que el testador sólo instituyó a la apelada como su sucesora; y ello como heredera, o sea, no a título particular, sino a título universal, disponiendo que sus bienes muebles e inmuebles pasaran a aquélla sin especial distinción. (Sentencia del TPI, en la pág. 7).

Agréguese a lo anterior, que el TPI interpretó que en vista de que el testador hizo un único y exclusivo llamamiento en su testamento a favor de la apelada, cuando hizo referencia a los términos muebles e inmuebles, lo hizo en el ánimo de disponer de todos sus bienes a favor de aquélla. Sostuvo que al ofrecer la descripción registral de su casa o residencia, después de haber mencionado el vocablo *"inmueble"*, denota su intención de utilizar tanto ese término como el de *"mueble"* conforme a su significado jurídico. Además, señaló que como sólo llamó a la apelada a heredarle, no era necesario que realizara un inventario detallado de todos los bienes muebles que quería dejarle después de su muerte. (Sentencia del TPI, en la pág. 8).

Por otra parte, y separándose de la tésis de los hoy apelantes, el TPI indicó que interpretó que la frase *"patria potestad"* en el testamento no fue utilizada por el finado con la intención de que se entendiera que lo que deseaba era dejarle a la apelada el inmueble descrito antes para que ésta meramente le usara y cuidara. A su juicio, de haber sido esa la intención, el testador hubiera utilizado el término *"custodia"*. Por tanto, concluyó que el finado Horacio Quiñones Rivera estaba traspasando su propiedad a la apelada Carmen Quiñones Rivera mediante su acto *mortis causa* de disposición de bienes. (Sentencia del TPI, en las páginas 9 y 10).

De lo dispuesto en la antes referida determinación judicial, acudieron ante nos los apelantes. Habiendo examinado los hechos y las incidencias de mayor relevancia a la controversia de autos, presentamos adelante el derecho aplicable para la resolución de la misma.

## II

El testamento es un negocio jurídico que tiene su médula en una voluntad, que se declara a través de las formalidades y solemnidades impuestas por la ley. *Moreda v. Roselli*, 150 D.P.R. 473, 480 (2000). Nuestro ordenamiento sucesorio está cimentado en dar cumplimiento a la voluntad del testador en la disposición de sus bienes en lo que no sea contrario a la ley. *Id.*; *Torres Ginés v. ELA*, 118 D.P.R. 431 (1987). Lo fundamental es que prevalezca la voluntad real del testador y el rol judicial en materia de interpretación testamentaria consiste en descubrir dicha voluntad a fin de que se produzcan en su día los efectos queridos por el testador dentro del marco permitido por ley. *Id.* En reiteradas ocasiones, el Tribunal ha expresado que la voluntad del testador es la *"ley de la Sucesión"*. *Id.*

Se ha indicado que por su naturaleza, la interpretación de los testamentos se da una vez fallece el testador. Pero se aclara que es otro quien se coloca en el lugar del testador para tratar de reconstruir lo que éste efectivamente quiso, pero teniendo en cuenta siempre que en el testamento se encuentra una declaración de voluntad que ha quedado cristalizada. *Id.*; *Licari v. Dorna*, 148 D.P.R. 453 (1999).

Respecto a las *"reglas de hermenéutica testamentaria"*, es preciso remitirnos a lo dispuesto en el Artículo 624 del Código Civil, 31 L.P.R.A. §2129. Esta disposición provee la norma de interpretación básica de los

testamentos:

"*Toda disposición testamentaria deberá entenderse en el sentido literal de sus palabras, a no ser que aparezca claramente que fue otra la voluntad del testador. En caso de duda se observará lo que parezca más conforme a la intención del testador, según el tenor del mismo testamento.*"

La citada disposición establece como el primer paso en la tarea de interpretación de un testamento, indagar la voluntad del testador del texto mismo de la disposición testamentaria. Así, se manda que cuando el texto sea claro, habrá de finalizar el ejercicio de interpretación testamentaria. *Id.* en la pág. 481. Se asegura que en estos casos la labor judicial resulta sencilla. No obstante, distinto es el caso si luego de examinada la disposición testamentaria, subsisten dudas sobre la voluntad del testador. En ese caso será preciso recurrir a los medios de prueba intrínsecos del testamento. Ello implica realizar un examen de lo que parezca más conforme a la intención del testador según el tenor del mismo testamento. *Id.*; 31 L.P.R.A. sec. 2129; *Licari v. Dorna, supra.* En otras palabras, se debe tratar de indagar la voluntad real del testador a base de un análisis del testamento en su totalidad. *Id.*

Una vez agotada la etapa de interpretación de la disposición *mortis causa* por medios de prueba intrínsecos, si todavía subsisten dudas sobre la voluntad del testador, es permisible acudir a la medios de prueba extrínseca. Esta forma de interpretación de testamentos consiste en examinar conductas, declaraciones o actos del testador. Como es de apreciarse, todo lo anterior no se evidencia dentro del texto del testamento, sino más bien fuera de aquél. *Id.*; *Licari v. Dorna, supra.* Algunos de los medios extrínsecos que pueden ser utilizados para indagar cuál fue la voluntad real del testador son testamentos anteriores, cartas, lo que se conocía sobre hábitos y costumbres del testador, el clima prevaleciente en sus relaciones de familia, el lenguaje que acostumbraba usar. *Id.* en las páginas 481 y 482.

Además de lo anterior, se ha expresado que en la labor de interpretación testamentaria es de enorme trascendencia examinar, entre otros asuntos, la cultura, las costumbres, mentalidad y hasta el grado de cultura jurídica del testador. *Id.* en la pág. 482. Por último, se ha mencionado que la interpretación de un testamento no puede tener el efecto de sustituir la voluntad declarada del testador por otra no declarada en lo absoluto. *Id.* La interpretación del testamento no se extiende a incluir lo no dicho y a dar por cumplido lo omitido. *Id.*; *Rodríguez Sardenga v. Soto Rivera*, 108 D.P.R. 565 (1979).

Abonando a lo anterior, es preciso traer a colación que se ha señalado que es indudable que la norma contenida en el Artículo 624 del Código Civil está dirigida, principalmente, a los tribunales, y que les impone la misión fundamental de dirimir las controversias relacionadas con la interpretación de los testamentos. Además, se comenta que la decisión que inicialmente tome el tribunal de instancia deberán sostenerla los foros apelativos, excepto en el caso de que el apelante demuestre que la misma es arbitraria o contraria a la voluntad del testador o a la ley. Efraín González Tejera, DERECHO DE SUCESIONES, Tomo II, (2000) en las páginas 75 y 76. Así pues, se expresa que la norma que impera en el ordenamiento español es que la interpretación testamentaria es función propia de los juzgadores del primer nivel, y que sus conclusiones hermenéuticas deben ser respetadas en casación, salvo el supuesto de que puedan ser calificadas de ilógicas o contrarias a la voluntad del testador. *González Tejera, op cit.,* en la pág. 76.

Se comenta, además, que la citada norma es igualmente clara en Puerto Rico, y ello, quedando demostrado por lo pronunciamientos del Tribunal Supremo de Puerto Rico en los casos normativos *Rivera Padró v. Rivera Correa*, 93 D.P.R. 196 (1966), y *Luce & Cía v. Cianchini*, 76 D.P.R. 165 (1954). *González Tejera, op cit.,* en la pág. 76. En el primero, en la pág. 205, por cuanto se expresó que repetidamente se ha resuelto "*que compete a los tribunales de justicia la misión de interpretar las disposiciones*". El segundo, en la pág. 171, puesto que ya había incluso establecido antes que "*no habiendo conformidad entre los interesados sobre cuál debe ser la interpretación de las disposiciones aquí en controversia, dicha misión corresponde a los tribunales*".

Súmese a todo lo anterior, que debe tenerse presente que basta la evidencia directa de un testigo que le merezca entero crédito al juzgador para probar cualquier hecho, salvo, claro está, que por ley se disponga otra cosa. Regla 10(D) de Evidencia, 32 L.P.R.A. Ap. IV. No sólo ello, sino que en nuestro sistema de derecho los juzgadores de hecho merecen gran respeto y confiabilidad en la apreciación imparcial de la prueba, pues éstos gozan de la oportunidad de ver y escuchar directamente a los testigos. *Pueblo v. Rivera Robles*, 121 D.P.R. 858 (1988). En ausencia de pasión, prejuicio, parcialidad o error manifiesto, y a menos que la apreciación de la evidencia se aleje de la realidad fáctica o la prueba sea inherentemente imposible o increíble, el tribunal apelativo debe abstenerse de intervenir con la apreciación de la evidencia hecha por el foro recurrido. *Pueblo v. Maisonave Rodríguez*, 129 D.P.R. 49, 63 (1991). Claro está, reconocemos que cuando los tribunales de apelación o revisión están ante evidencia de deposiciones, estipulaciones escritas u orales, o por hechos incontrovertidos por las alegaciones o la prueba, están en igual posición que la sala sentenciadora para hacer sus propias determinaciones. *Castro v. Meléndez*, 82 D.P.R. 885 (1961).

Conforme a las doctrinas jurídicas esbozadas arriba, procedemos a aplicarlas a los hechos de la controversia de autos.

### III

En este caso, los apelantes han sostenido reiteradamente que el lenguaje y contenido del texto del testamento en controversia estaba maculado de ambigüedad y ausencia de claridad. Con su queja, debe entenderse que negaron la posibilidad de que se interpretara el testamento en su sentido literal. Entonces, ante su contención, se celebró la correspondiente vista para indagar la voluntad real del testador a base de un análisis del testamento en su totalidad. De hecho, en conjunción a esta fase interpretativa de las disposiciones testamentarias del testador, igualmente se ofreció la oportunidad a las partes de aportar medios de prueba extrínsecos en el ánimo de dar con la voluntad o intención del testador. Ello queda en evidencia, ante el hecho de que la parte apelada pasó prueba testifical que dio constancia al juzgador de hechos sobre las conductas, declaraciones o actos del testador, y además, del clima prevaleciente que permeó en sus relaciones de familia, particularmente durante el período de enfermedad que antecedió a la muerte del testador.

Por su parte, los apelantes no presentaron la prueba que anticiparon previo al juicio. No convencieron al TPI de que el testador tuviera algún grado de cultura jurídica que demostrara que aquél se sirvió de los términos legales que vertió en su testamento, al menos no de modo tal, que fuera cónsono con su contención. Sus argumentos, aunque vívidos e ingeniosos, rayan también en lo especulativo.

Es menester concluir que los apelantes no podían demostrar que hubo una intención del testador de favorecerles dejándole la nuda propiedad de sus bienes inmuebles y muebles (incluyendo entre este último concepto, una considerable suma de dinero depositada en un banco), meramente por argüir en sus escritos que el testador les estimaba estando en vida; o porque el testador no le hubiera pedido a la apelada la información de sus cuentas bancarias para hacer alusión expresa sobre ese particular en el testamento; o porque estimaran que por la experiencia laboral del testador en el Departamento de Educación, trabajando con comedores escolares, éste no estaba ajeno al significado y todas las consecuencias jurídicas de la nomenclatura que utilizó en su testamento, que de hecho fue uno ológrafo, y respecto al cual no se probó que hubiera sido redactado luego de haber recibido alguna asesoría legal. Una interpretación en contrario tendría el efecto de sustituir lo que razonablemente puede interpretarse que fue la voluntad declarada por el testador por algo no declarado en lo absoluto.

En el ejercicio de su juicio, discernimiento y facultad interpretativa, y de conformidad con las doctrinas aplicables en nuestro ordenamiento jurídico en materia sucesoral testamentaria, el TPI concluyó que el testador sólo instituyó a la apelada como su sucesora; y ello como heredera, o sea, a título no particular, sino universal, disponiendo que sus bienes muebles e inmuebles pasaran a aquélla sin especial distinción. El hermano Foro de Instancia basó su determinación en la prueba testifical ofrecida por la parte apelada, la cual le mereció entero crédito. En vista de que la parte apelante no demostró que la interpretación del testamento fue arbitraria o

contraria a la voluntad del testador o de la ley, no intervendremos con las determinaciones que realizó el tribunal de instancia.

En lo que atañe al segundo señalamiento de error esgrimido por los apelantes, relacionado a la imposición de pago de honorarios de abogado por el foro de instancia, determinamos lo siguiente. Entendemos que si bien no podemos concluir que la actuación del foro de instancia constituyó un abuso de su discreción, tampoco podemos expresar categóricamente que de los autos surgiera que los apelantes o sus abogados hubiesen actuado en este caso de forma terca y obstinada, en actitud totalmente desprovista de fundamentos, de modo tal que justificara castigarles mediante la imposición de honorarios. *Santos Bermúdez v. Texaco, P.R., Inc.*, 123 D.P.R. 351, 356 (1989).

## IV

En mérito de lo anteriormente expuesto, no acogemos la solicitud presentada por el apelante en su escrito, y por consiguiente, confirmamos lo dispuesto en la sentencia apelada en cuanto a la declaración de la parte apelada, Carmen Quiñones Rivera, como heredera universal del finado Horacio Quiñones Rivera.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones