CC-97-468                                                    1

En el Tribunal Supremo de Puerto Rico

| | |
|---|---|
| Marianne Antoniette Licari<br>C/P Marianne Mcgill<br>Josephine Crocifissa Licari<br>C/P Josephine Flanagan<br>      Peticionaria<br><br>      V.<br><br>Flora Dorna<br>      Recurrida | Certiorari<br><br>99 TSPR 84 |

Número del Caso: CC-1997-0468

Abogados de la Parte Peticionaria: Lcdo. José Guevara Fuentes
                                   Lcda. María B. Fuster

Abogados de la Parte Recurrida:    Lcdo. Antonio E. Arraiza Miranda
                                   Lcda. Mady Pacheco García

Tribunal de Instancia, Sala Superior de San Juan

Juez del Tribunal de Primera Instancia: Hon. Angel M. Almodóvar

Tribunal de Circuito de Apelaciones, Circuito Regional I

Juez Ponente: Hon. Ramos Buonomo

Fecha: 6/2/1999

Materia: Nombramiento de Administrador Judicial

     Este documento constituye un documento oficial del Tribunal
     Supremo que está sujeto a los cambios y correciones del
     proceso de compilación y publicación oficial de las
     decisiones del Tribunal. Su distribución electrónica se hace
     como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Marianne Antoniette Licari
C/P Marianne Mcgill
Josephine Crocifissa Licari
C/P Josephine Flanagan

   Demandantes y Peticionarias

   v.                                    CC-97-468        Certiorari

Flora Dorna

   Demandada y Recurrida

Opinión del Tribunal emitida por el Juez Asociado señor Hernández Denton

San Juan, Puerto Rico, a 2 de junio de 1999.

Hoy nos toca resolver si el llamamiento hereditario que hizo un testador a favor de la que era su esposa cuando otorgó el testamento, fue condicionado a que al momento de la muerte del testador no se hubiese disuelto el vínculo matrimonial entre ambos. Por entender que en el caso de marras el llamamiento fue uno puro, no sujeto a condición alguna, confirmamos la sentencia dictada por el Tribunal de Circuito de Apelaciones, Circuito Regional I, San Juan.

## I

Philip F. Licari, y Flora Dorna González contrajeron matrimonio el 26 de agosto de 1958. El 29 de noviembre de 1972, el señor Licari otorgó

testamento abierto ante notario, mediante el cual instituyó como heredera universal de todos sus bienes a su entonces esposa Flora Dorna González. El matrimonio entre Philip Licari y Flora Dorna quedó disuelto mediante sentencia de divorcio por la causal de separación dictada por el entonces Tribunal Superior el 17 de abril de 1978, esto es, seis (6) años después de haberse otorgado el testamento abierto.

El señor Licari, quien era abogado admitido a ejercer la profesión en Puerto Rico, falleció el 12 de julio de 1995, es decir, transcurridos diecisiete (17) años del divorcio y de la liquidación de la sociedad de bienes gananciales que constituía con Flora Dorna. Al momento de su fallecimiento, no le sobrevivieron ascendientes ni descendientes y sus parientes más cercanos eran sus dos sobrinas, las aquí peticionarias, Marianne Antoniette Licari y Josephine Crociffisa Licari, hijas del hermano del señor Licari. Del Registro de Testamentos surge que el testamento abierto otorgado por Philip Licari nunca fue revocado.

Las sobrinas del señor Licari alegadamente guardaban una estrecha relación con él y éste les reiteró en varias ocasiones que ellas serían las herederas universales de todos sus bienes. Señalan las peticionarias, además, que acompañaron al señor Licari a reuniones, visitas y actividades familiares, que se ocuparon de su salud y sufragaron sus gastos personales y médicos en su última enfermedad, así como los gastos de su funeral.

El 13 de noviembre de 1995, las dos sobrinas del causante presentaron ante el Tribunal de Primera Instancia una acción judicial contra Flora Dorna González en la cual impugnaron el testamento y solicitaron, entre otras cosas, que fueran declaradas únicas y universales herederas de Philip Licari.

La demandada, Flora Dorna, compareció representada por su tutor legal, José M. Náter, quien por conducto de su representación legal, presentó solicitud de sentencia sumaria y presentó demanda de reconvención para que se nombrara un administrador judicial. Las

sobrinas de Licari se opusieron a dicha solicitud y, en su lugar, solicitaron que se dictara sentencia sumaria a su favor.

El Tribunal de Primera Instancia dictó sentencia sumaria a favor de la demandada, Flora Dorna, declarando válido el testamento abierto otorgado por el Sr. Philip Licari a su favor. Inconforme, la parte demandante apeló ante el Tribunal de Circuito de Apelaciones, el cual confirmó la sentencia dictada por el Tribunal de Primera Instancia.

No conforme con la sentencia dictada por el foro apelativo, las demandantes Marianne Antoniette Licari y Josephine Crocifissa Licari, recurren ante nos. Plantean, en síntesis, que el testamento otorgado por el Sr. Philip Licari debió haberse declarado ineficaz porque en el testamento se utilizó por el causante el término "esposa" junto al nombre de la Sra. Flora Dorna. Interpretan que dicho uso condicionó la institución de heredero a que Flora Dorna fuera la "esposa" del causante. Exponen, además, su inconformidad con el vehículo procesal utilizado para la solución final de la controversia: la sentencia sumaria. Por último, entienden que el Tribunal de Circuito de Apelaciones debió aplicar la jurisprudencia norteamericana a la controversia de derecho sucesoral.[1]

Estando sometido el recurso para nuestra consideración, en octubre de 1998 se nos informó el fallecimiento de la Sra. Flora Dorna. Tras los trámites procesales correspondientes, ordenamos la sustitución de parte correspondiente. Mediane Resolución de 12 de marzo de 1999 autorizamos la sustitución de la parte demandada por sus herederos.

Luego de haber examinado el recurso y los ilustrados alegatos sometidos por las partes, estamos en posición de resolver.

II

(A)

---

[1] Sobre este extremo basta indicar que en materia de derecho sucesoral estamos ante el derecho civilista español por lo que el punto de partida para el análisis de interrogantes que no hallan respuesta en nuestro ordenamiento jurídico es el Código Civil Español y los comentarios y análisis de los más connotados tratadistas de Derecho

El testamento es un negocio jurídico de especiales características, y como todo negocio jurídico tiene su médula en una voluntad, que en este caso se declara a través de las formalidades y solemnidades impuestas por la ley. Díez Picazo, Sistema de Derecho Civil: Derecho de Familia y Derecho de Sucesiones, Madrid Editorial Tecnos, Volumen IV, Pág. 459. En reiteradas ocasiones este Tribunal ha expresado que la voluntad del testador es la "ley de la Sucesión". Fernández Franco v. Castro Cardoso, 119 D.P.R. 154 (1986); Calimano Díaz v. Rovira Calimano, 113 D.P.R. 702 (1983); Viuda de Sambolín v. Registrador, 94 D.P.R. 320 (1967).

Las dificultades en materia de interpretación testamentaria radican en el hecho de que dicha interpretación del negocio jurídico (testamento), tiene lugar una vez fallecido el testador, lo que imposibilita que el mismo pueda participar en el proceso interpretativo. Es otro el que se coloca en el lugar del testador para tratar de reconstruir lo que efectivamente quiso, pero teniendo en cuenta siempre que en el testamento se encuentra una declaración de voluntad que ha quedado cristalizada. Díez Picazo, supra, pág. 459.

El Artículo 624 del Código Civil establece el punto de partida para la interpretación de un testamento:

> *Toda disposición testamentaria deberá entenderse en el sentido literal de sus palabras, a no ser que aparezca claramente que fue otra la voluntad del testador. En caso de duda se observará lo que parezca más conforme a la intención del testador, según el tenor del mismo testamento.* 31 L.P.R.A. sec. 2129.

Como se desprende de la lectura de dicho artículo, el mismo está presidido por el principio de la supremacía de la voluntad del testador. Esto no significa que el intérprete del testamento deba indagar lo que quiso el testador como tarea previa a toda lectura de disposición testamentaria. El Artículo 624 obliga como primera medida a colegir la voluntad del testador del texto mismo de la disposición testamentaria.

---

Civil Español. Véase Moreda v. Toledo Roselli, res. el 18 de octubre

El intérprete no debe pasar de ahí cuando el texto de la cláusula testamentaria sea claro, de suerte que baste la simple lectura para determinar el propósito del testador. Sentencia Española de 26 de noviembre de 1974. En ese sentido se ha señalado que cuando el lenguaje usado en un testamento es claro y la disposición testamentaria se manifiesta diáfanamente de la lectura literal de las disposiciones del testamento, la labor judicial resulta sencilla. Véanse Moreda Toledo v. Rosselli, res. el 18 de octubre de 1996, 141 D.P.R ___; Torres Ginés v. E.L.A., 118 D.P.R. 436 (1987).

Ahora bien, si luego de examinada la disposición testamentaria subsisten dudas sobre la voluntad del testador porque la misma es oscura o ambigua o está consignada en forma imprecisa, deficiente o contradictoria será preciso *"observar lo que parezca más conforme a la intención del testador según **el tenor del mismo testamento"**.* 31 L.P.R.A. sec. 2129. Es lo que ha denominado la doctrina civilista como medios *de prueba intrínsecos* de interpretación testamentaria.

Algunos de estos medios de interpretación son: el *lógico*, con énfasis en el elemento racional; el *sistemático*, con énfasis en la totalidad de las declaraciones testamentarias y el *teológico*, con énfasis en el verdadero sentido que impulsó la voluntad del testador. Torres Ginés v. E.L.A., supra. El propósito fundamental de estos mecanismos consiste en tratar de derivar la voluntad real del testador de un análisis integrado del testamento, es decir, que no se analicen las disposiciones testamentarias considerando frases o palabras aisladas, sino la totalidad de la declaración de la voluntad pues todas las cláusulas del testamento en su conjunto integran la verdadera voluntad del testador. Véase Puig Brutau, Fundamentos de Derecho Civil, Barcelona, Editorial Bosch, 1977, Vol. 2, Tomo V, págs. 249-252.

Una vez agotada sin éxito la etapa de interpretación de la disposición *mortis causa* por medios de prueba intrínsecos, es que

---

de 1996, 141 D.P.R. ___.

resulta permisible acudir a la prueba extrínseca. Esta forma de interpretación de testamentos consiste en acudir a conductas, declaraciones o actos del testador que por definición se hallan fuera del testamento, para indagar la verdadera voluntad del testador. Díez Picazo, supra, pág. 461.

La jurisprudencia española reiteradamente ha admitido la prueba extrínseca como recurso de interpretación testamentaria. En ese sentido se ha señalado que " *No hay obstáculo legal que impida al juzgador, acudir, para la interpretación del contenido de las disposiciones del testamento, a circunstancias posteriores, los llamados medios* de prueba extrínsecos". Sentencia de 8 de julio de 1940. Sin embargo, ha insistido el Tribunal Supremo Español que el uso de medios de prueba extrínsecos no es admisible cuando el resultado es aportar una expresión, no ya incompleta, sino inexistente. Es decir, como indican Lacruz y Sancho, para que las pruebas extrínsecas sean utilizables, es menester que el testamento en sí contenga "disposición interpretable". Lacruz Berdejo y Sancho Rebullida, Derecho de Sucesiones, Vol.1, Parte General, Barcelona, 1971, pág.235; Véase además Puig Brutau, supra, pág.254.

Los medios extrínsecos admisibles podrían ser testamentos anteriores, cartas, lo que se conocía sobre hábitos y costumbres del testador, el clima prevaleciente en sus relaciones de familia, el lenguaje que acostumbraba usar, etc. González Tejera, supra, pág.66.

Por otro lado, resulta pertinente señalar que en materia de interpretación de testamentos es de enorme trascendencia examinar, entre otros asuntos, la cultura, las costumbres, mentalidad y *hasta el grado de cultura jurídica del testador.*[2]

Preciso es señalar, además, que debe tomarse en cuenta en la interpretación testamentaria el tipo de testamento otorgado. Esto es así porque, por ejemplo, en la redacción de un testamento abierto

---

[2] Véase Torres Ginés v. E.L.A., supra, en el cual se tomó en cuenta el conocimiento legal del testador para interpretar su testamento.

interviene un notario.  Los notarios han de redactar los testamentos conforme a la voluntad del testador, adaptándola a las formalidades jurídicas para su eficacia.  Por lo que, cuando el causante otorga testamento abierto ante notario, éste es quien realiza la primera interpretación de la última voluntad del testador.  Los notarios, como conocedores del Derecho que son, al redactar un testamento abierto han de ir refinando y moldeando las expresiones que allí se esbozan, de suerte que las palabras del testamento sean lo más fieles a lo querido por el testador.  Véase Puig Brutau, supra, pág.250.

Por último, es preciso destacar que, independientemente del método de interpretación testamentaria que sea preciso utilizar, **la interpretación no puede sustituir**, **la voluntad declarada del causante por otra no declarada en lo absoluto**. Véase E. González Tejera, Derecho Sucesorio Puertorriqueño, San Juan, Ed. Ramallo, 1983, Vol, II, Pág.55. Es decir, **la interpretación del testamento no se extiende a incluir lo no dicho y a dar por cumplido lo omitido**.  Véase Rodríguez Sardenga v. Soto Rivera, 108 D.P.R. 565 (1979).

Una postura excesivamente liberal en materia de interpretación testamentaria, llegando incluso a suplir disposiciones inexistentes, puede, además de frustrar la voluntad del testador, tener el efecto de fomentar litigación excesiva en este campo, con los costos sociales y económicos que ello implica.  González Tejera, supra, pág. 57.

(B)

La interpretación del testamento, como la de cualquier otro negocio jurídico, debe encuadrarse en determinadas circunstancias temporales.  Como señalamos anteriormente, para determinar el sentido de una cláusula testamentaria, el Artículo 624 del Código Civil ordena atender la voluntad del testador.  Es en este momento en el que surge el siguiente interrogante: al interpretar un testamento, ¿cuál será la voluntad determinante, la que tenía el testador al momento de testar o

la que tenía al tiempo de su muerte? Esta legítima preocupación se ha

expresado de la siguiente forma:

> *Debido al periodo de vacatio del testamento, a ese lapso de tiempo, más o menos largo según los casos, que necesariamente media entre la redacción y la apertura del mismo, las circunstancias personales del testador o las circunstancias externas directamente relacionadas con la interpretación de las cláusulas testamentarias pudieron modificarse o alterarse entre los dos momentos capitales de la vida del negocio de última voluntad, siendo en consecuencia, una la intención del testador al tiempo del otorgamiento del acto y otra, tal vez muy diferente, la que tuviera al tiempo de su muerte.* Jordano Barea, Interpretación del Testamento, Barcelona, Editorial Bosch, 1958, pág.111.

Por la naturaleza jurídica del testamento, este es un negocio

*perfecto, acabado, cumplido*, que adquiere carácter *definitivo*- aunque

revocable- para el testador apenas formado el mismo.  El testamento se

perfecciona y cierra para el autor desde el momento de su redacción y

suscripción.   Véase Jordano, supra, pág.119.   En ese sentido ha

señalado Jordano que *"la llamada voluntad verdaderamente última del*

*testador es, por tanto, jurídicamente irrelevante: queda fuera del*

*negocio.  La nueva orientación de voluntad no puede valer ni como medio*

*de interpretación, ni como negocio unilateral mortis causa, si no se*

*reviste de la forma requerida".*      Jordano, supra, pág. 119.

Acertadamente señala este autor:

> *Siendo esencialmente un negocio no recepticio que se cumple con la creación y simultánea emisión de la declaración de la voluntad, no hay ninguna razón para referir su interpretación al tiempo de la muerte del testador en lugar de al tiempo en el acto se formó de modo definitivo, aunque revocable.*
>
> ***La voluntad relevante es la expresada en el testamento y no la manifestada*** *en época sucesiva. Si la disposición tiene dos sentidos, sólo valdrá el que es conforme a la intención que el testador tenía al momento de testar y no es el que es conforme a una intención sucesiva.* Jordano, supra, págs. 119-120. (Énfasis Suplido).

El que determinemos que al interpretar un testamento, el énfasis

deba radicar en la voluntad o intención del testador al momento de

otorgar el testamento, está intrínsecamente relacionado con un asunto

fundamental.  Esta visión que hoy exponemos toma en cuenta que existe

dentro de nuestro ordenamiento jurídico sucesorio civilista un

mecanismo que posibilita que el testador manifieste cualquier cambio que ocurra en su voluntad:  la revocación del testamento.

El artículo 668 del Código Civil, 31 L.P.R.A sec. 2331, consagra el principio de la revocabilidad de los testamentos al disponer, en lo pertinente, que " *todas las disposiciones testamentarias, son esencialmente revocables, aunque el testador exprese en el testamento su voluntad o resolución de no revocarlas"*.  El fundamento de este principio es que como se pretende que el testamento refleje la última voluntad del otorgante, es necesario que cuando ésta cambie se pueda derogar o sustituir aquel testamento que la recogía.  Albaladejo, Comentarios al Código Civil y Compilaciones Forales, Madrid, Edersa, (1983), Tomo IX, Vol. II, pág. 386.

El cambio de voluntad permite revocar el testamento.  Sin embargo, si por alguna razón, no se revoca éste será válido aunque encierre la voluntad que ya no se tiene.  Dicho de otro modo, para que el cambio de voluntad del testador surta efectos jurídicos, el mismo debe expresarlo según la forma que permite el ordenamiento, es decir, habrá de revocar el mismo según las formas admitidas legalmente.[3] Esto ha sido expresado por el tratadista Manuel Albaladejo de la siguiente forma:

> *Según todo lo dicho el cambio de voluntad permite revocar el testamento hecho.  Pero si por la razón que sea, la revocación no se lleva a la práctica, valdrá el testamento que aún encierra la voluntad que ya no se tiene.  **Así que verdaderamente lo que importa no es que cambie de voluntad, sino que se teste de nuevo según la nueva voluntad**.*
>
> *En conclusión, la revocabilidad esencial del testamento, establecida en amparo de la voluntad nueva, no hace prevalecer ésta inmediatamente, sino que sólo permite que el interesado*

---

[3] En nuestro ordenamiento jurídico se reconocen tres formas de revocación de un testamento: la revocación expresa, la tácita y la real. Artículos 668-674 del Código Civil, 31 L.P.R.A. sec. 2231-2237. La revocación expresa es aquella en virtud de la cual el testador, cumpliendo con todas las solemnidades exigidas para hacer un testamento, expresamente revoca un testamento anterior en todo o en parte.  Mediante la revocación tácita el testador altera o cambia su voluntad testamentaria otorgando un testamento posterior. La revocación real se produce cuando el testador realiza una acto del cual puede concluirse racionalmente que su autor ha revocado el testamento anterior.  Esta último tipo  de revocación sólo está disponible para los testamentos cerrados. San Juan, Ex Parte, 126 D.P.R. 84.

*la haga prevalecer cuando lo exprese en forma legal.*
Albaladejo, supra, págs. 386-387. (Énfasis Suplido).

Así pues, como la voluntad o la intención del hombre puede variar hasta el momento de su muerte, se permite que se exprese, mediante la revocación, un cambio en ésta.  Pero una vez el testador expresa su voluntad conforme a los instrumentos dispuestos por ley, la misma subsiste mientras el autor, durante su vida, no realice algún acto que para el legislador implique la revocación del testamento.  Mientras, el testador no cambia su testamento, se presume que su voluntad persevera, tal y como la misma quedó expresada en el testamento.  González Tejera, supra, pág. 242.

(C)

Nuestro ordenamiento reconoce la libertad de disposición del testador o *jus disponendi*.  No obstante, algunas disposiciones del Código Civil establecen limitaciones a este principio.  Fernández Franco v. Castro Cardoso, 119 D.P.R. 154 (1987).  Así por ejemplo, existe una porción de bienes de la cual el testador no puede disponer "por haberla reservado la ley a determinados herederos, llamados por esto herederos forzosos".  Artículo 735 del Código Civil, 31 L.P.R.A. sec. 2361.

El Artículo 736 del Código Civil, 31 L.P.R.A. sec. 2362, establece que son herederos forzosos: los hijos y descendientes respecto de sus padres y ascendientes.  A falta de los anteriores, los padres y ascendientes respecto de sus hijos y descendientes.  También es heredero forzoso el viudo o la viuda, respecto a la cuota viudal usufructuaria.  El testador que no tiene herederos forzosos puede disponer por testamento de todos sus bienes o de parte de ellos a favor de cualquier persona que tenga capacidad para adquirirlos.  Artículo 692 del Código Civil, 21 L.P.R.A. sec. 2281.

El Artículo 719 del Código Civil, 31 L.P.R.A. sec. 2331, dispone que "las disposiciones testamentarias, tanto a título universal, como

particular, podrán hacerse bajo condición". Sin embargo, el testador no podrá imponer sobre la legítima de los herederos forzosos gravamen, ni condición alguna. Artículo 741 del Código Civil, 31 L.P.R.A sec. 2367. Ahora bien, uno de los supuestos en los que el testador puede gravar o condicionar un llamamiento hereditario es cuando le deja parte o todos sus bienes a un heredero no forzoso.

La condición es una determinación de voluntad incorporada a una disposición testamentaria que consiste en acontecimiento futuro e incierto, de cuya realización el testador hace depender la eficacia de su disposición. González Tejera, supra, pág.312. Si el efecto consiste en hacer depender la adquisición del derecho de la realización del hecho futuro, la condición es suspensiva, mientras que si el efecto de que ocurra el hecho futuro o incierto es la terminación de la adquisición del derecho, la condición es resolutoria. Puig Brutau, supra, pág.322. Una vez aclarado estos aspectos es necesario determinar si en el caso de autos el llamamiento hereditario que hizo el testador fue uno sujeto a condición. Veamos.

III

(A)

De entrada resulta pertinente señalar que Philip Licari, en ausencia de herederos forzosos, podía disponer de todos sus bienes a favor de cualquier persona. La contención principal de la parte demandante en el presente caso es que el testador tenía la intención de instituir a Flora Dorna como su única y universal heredera mientras ésta estuviera casada con él. Esto es, que el llamamiento era sujeto a una condición: que Flora Dorna siguiese siendo esposa del señor Licari al momento de la muerte de éste.[4] Para verificar la corrección de esta

---

[4] Uno de los fundamentos legales que utiliza la parte demandada para sustentar su posición es el Artículo 696 del Código Civil, 31 L.P.R.A. sec. 2285, el cual dispone en lo pertinente que " la expresión de una causa falsa de la institución de heredero o del nombramiento de legatario, será considerada como no escrita a no ser que del testamento resulte que el testador no habría hecho tal institución o legado si

aseveración, es preciso analizar el texto del testamento otorgado por el señor Licari. Las cláusulas pertinentes del testamento objeto de este recurso disponen lo siguiente:

> *"--PRIMERO:    Que(Philip Licari) nació en la ciudad de New York, New York, en abril veintiuno de mil novecientos siete, hijo legítimo de Frank Licari y Crofissa* [sic] *Purpura, ambos fallecidos.*
>
> *--SEGUNDO:    Declara el testador que está casado con doña Flora Dorna y que en dicho matrimonio no han procreado hijos. Que no tiene descendientes alguno (sic) ni en la actualidad tampoco tiene ascendientes, y hace constar además el testador:*
>
> *A. Que casó (sic)con su **actual esposa Flora Dorna** el día veintiséis de agosto de mil novecientos cincuenta y ocho y que todos los bienes que posee son de índole ganancial y los mismos son conocidos de su esposa y cuyos bienes aparecen de sus libros de cuenta, escritura y otros documentos que se guardan en su residencia.*
>
> *¯¯TERCERO:    Que es su deseo que todo lo que se relacione con sus funerales (sic) y el entierro de su cadáver sea dispuesto por **su esposa** y del modo que ella estime conveniente.*
>
> *¯¯CUARTO:    Por el presente testamento, el testador instituye, nombra y elige como su única y universal heredero (sic), para todos sus bienes, derechos y acciones, después de pagadas y satisfechas sus deudas, **a su esposa Flora Dorna.***
>
> *--QUINTO:    Para cumplimentar lo que deja dispuesto el testador, este nombra como su albacea testamentario **a su esposa doña Flora Dorna...***" (Énfasis Suplido).

De la lectura de la disposición testamentaria en virtud de la cual el señor Licari nombra heredera única y universal de todos sus bienes a la Sra. Flora Dorna, no se desprende que el llamamiento haya sido condicionado de forma alguna, es decir, no se hizo depender la eficacia de la disposición a la ocurrencia de un hecho futuro e incierto. Tampoco se desprende otra conclusión del resto de las precitadas disposiciones testamentarias.

La parte demandante basa su contención en parte en el análisis de las cláusulas testamentarias en las que el señor Licari hacía referencia a su entonces esposa, Flora Dorna. Siguiendo igual método de

---

hubiese conocido la falsedad de la causa". Dicho Artículo es inaplicable a la situación de hechos que tenemos ante nuestra consideración porque tradicionalmente se ha aplicado a situaciones en las que la voluntad del testador estuvo viciada por el error. Esta no es la situación en el caso de autos. Para una discusión del alcance de dicho artículo, véase Albaladejo, supra, págs. 327-352.

análisis notamos que en las ocasiones en las que el señor Licari hacía referencia a su entonces esposa siempre incluyó su nombre completo, excepto en la cláusula tercera del testamento en la que dispone que todo lo relacionado con su funeral estaría a cargo de "su esposa".

El testador al dejarle todos sus bienes a "su esposa Flora Dorna" lo que hizo fue un llamamiento nominal("Flora Dorna") y le añadió la **cualidad o relación** que tenía esa persona con él al momento de otorgarse el testamento. El que el testador al hacer el nombramiento haya incluido esa información accesoria en el testamento no hace que el llamamiento estuviese sujeto condición. Resolver lo contrario sería interpretar el testamento para "incluir en el testamento lo no dicho".

A distinto resultado se llegaría si el llamamiento hubiese estado condicionado(y redactado como tal) a que Flora Dorna mantuviese hasta el momento de la muerte del testador dicha cualidad o relación con éste.

(B)

A pesar de que el testamento es claro y no impone ninguna condición, la parte demandante sostiene que la intención del testador no pudo haber sido dejarle todos sus bienes a la Sra. Flora Dorna porque ya se había divorciado de ésta hacía un periodo aproximado de diecisiete (17) años y porque alegadamente les había manifestado a sus sobrinas que ellas serían sus únicas herederas.

Si analizamos cuidadosamente estos argumentos esbozados por la parte demandante, podemos concluir que el problema no radica en la claridad o falta de ella en el testamento. El testamento es claro:  se hace un llamado puro, no sujeto a condición o carga alguna. El problema que verdaderamente está ante nuestra consideración es que pudo haber un cambio de voluntad del testador. Esto es, que la voluntad o la intención que tenía el testador al momento de otorgar el testamento puede haber sido diferente a la que tenía al momento de fallecer. Al

momento de otorgar el testamento no hay duda de que su voluntad era dejarle todos sus bienes a Flora Dorna. No obstante, cabe la posibilidad que en vista de la ocurrencia del divorcio, su voluntad hubiese cambiado y deseara dejarle todos sus bienes a sus sobrinas.

Como señalamos anteriormente, cuando existe una posible diferencia entre la voluntad expresada en un testamento y la manifestada en una época sucesiva, ha de prevalecer la primera. Esto es así porque el testador tenía a su disposición el mecanismo que reconoce nuestro ordenamiento para expresar cualquier cambio de voluntad, de haberlo tenido, esto es, la revocación del testamento. Lo que verdaderamente importa no es que en efecto haya ocurrido un cambio de voluntad del testador, sino que se teste de nuevo según la nueva voluntad.

Así pues, el mecanismo que tenía Licari a su disposición para expresar un cambio de voluntad de haberlo tenido era revocar su testamento mediante una de las formas permitidas por nuestro ordenamiento. Tuvo diecisiete (17)años para revocar su testamento y optó por no hacerlo y mantener la institución de heredero a favor de Flora Dorna. Tampoco podemos pasar por alto que el señor Licari, a la fecha de su fallecimiento, así como a la fecha en que se otorgó el testamento era abogado admitido a ejercer la profesión en Puerto Rico y debía conocer las leyes relativas a la revocación de testamentos. Además, habiendo otorgado un testamento abierto, el señor Licari tuvo a su disposición el asesoramiento de un notario público.

En suma, en el caso de autos surge claramente del testamento la voluntad del señor Licari de dejarle la totalidad de sus bienes a Flora Dorna. No hay nada más que interpretar. Valga señalar que el señor Licari reconoció en el testamento la existencia de otros "familiares" en la cláusula sexta del testamento, más no hizo disposición alguna a su favor. Por el contrario, lo que hizo fue expresar su deseo de que se evitara la intervención judicial en cuanto a su testamento para que

sus familiares mantuvieran relaciones armoniosas entre sí.[5] Además, expresó en su testamento el deseo de que el mismo se cumpliera "religiosamente".

Ante todas estas circunstancias es innecesario recurrir a prueba extrínseca al testamento para determinar la voluntad del testador. Al no ser necesario indagar sobre la intención o voluntad del testador, no erró el Tribunal de Instancia al dictar sentencia sumariamente ya que en el presente caso no hay controversia sustancial en cuanto algún hecho material. 32 L.P.R.A., Ap.III, R-36.3.[6] Precisamente por tal razón ambas partes, *incluso la parte demandante*, presentaron ante el foro de instancia sendas mociones solicitando que se dictara sentencia sumariamente a su favor.

IV

Por las razones anteriormente esbozadas, entendemos que el llamamiento hereditario que hizo el Sr. Philip Licari a favor de Flora Dorna es válido. Por tal razón, confirmamos la sentencia dictada por el Tribunal de Circuito de Apelaciones y devolvemos el caso al Tribunal de Primera Instancia, para que éste resuelva la reconvención presentada por Flora Dorna.

Se dictará la sentencia correspondiente.


Federico Hernández Denton
Juez Asociado

---

[5] La cláusula sexta del testamento dispone: "Es el deseo ferviente del testador que se evite la intervención judicial, fuera de las gestiones imprescindibles de índole testamentaria, en lo relacionado con su testamento, todo en ahorro de gastos y para que sus familiares conserven entre sí buenas relaciones de amistad y armonía".

[6] Al determinar en el caso de marras que de la lectura integral del testamento surge la intención del testador no existe necesidad de considerar hechos extratestamentarios. Cuando luego del análisis testamentario persisten dudas sobre la verdadera intención del testador procede considerar este tipo de prueba. Véase, Moreda Toledo v. Roselli, supra.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Marianne Antoniette Licari
C/P Marianne Mcgill
Josephine Crocifissa Licari
C/P Josephine Flanagan
                                        CC-97-468          Certiorari
   Demandantes y Peticionarias

      v.

Flora Dorna

   Demandada y Recurrida

SENTENCIA


San Juan, Puerto Rico, a 2 de junio de 1999.


Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integral de la presente, se confirma la sentencia dictada por el Tribunal de Circuito de Apelaciones que confirmó la Sentencia del Tribunal de Instancia que declaró válido el testamento.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Naveira de Rodón emitió Opinión Disidente. El Juez Asociado señor Fuster Berlingeri, inhibido.


Isabel Llompart Zeno
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Marianne Antoinette Licari
C/P Marianne Mcgill
Josephine Crocifissa Licari
C/P Josephine Flanagan

    Peticionarias                          CC-97-468

       v.

Flora Dorna

    Recurrida


Opinión disidente emitida por la Juez Asociada señora Naveira de Rodón.



San Juan, Puerto Rico, a 2 de junio de 1999.


Disentimos de la opinión que hoy emite la mayoría de este Tribunal por entender que el Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito) erró al avalar la utilización por el Tribunal de Primera Instancia del mecanismo procesal de la sentencia sumaria para resolver el presente caso.

Después de analizar ponderadamente la totalidad de los documentos sometidos por las partes junto con sus respectivas solicitudes de sentencia sumaria, así como la demanda jurada, somos de la opinión que del testamento en controversia no emana claramente

la última voluntad del señor Phillip Licari. Por ello entendemos era necesario que el foro de instancia celebrara una vista evidenciaria para dilucidar esta crucial cuestión mixta de hecho y de derecho.

I

Los hechos procesales del caso son relativamente sencillos. El 13 de noviembre de 1995, las señoras Marianne Antoinette Licari y Josephine Crocifissa Licari, sobrinas del causante Phillip Licari (en adelante sobrinas) presentaron ante el tribunal de instancia una demanda jurada contra la señora Flora Dorna González, ex esposa del referido causante. La demanda impugnaba la validez del testamento otorgado por el señor Licari en el cual se designaba a la señora Dorna González como su única y universal heredera. Solicitaron además, que se les declarase a ellas como únicas y universales herederas.

La demandada señora Dorna González compareció representada por su sobrino y tutor, el señor José Manuel Náter Dorna, ya que había sido declarada judicialmente incapaz debido al avanzado estado de deterioro mental causado por su padecimiento de alzheimers. Luego de que las partes realizaran un descubrimiento de prueba, la demandada Dorna González presentó una moción de sentencia sumaria acompañada de varios documentos.

Las sobrinas demandantes se opusieron y solicitaron a su vez que se dictara sentencia sumaria a su favor. Acompañaron con la moción veinticinco (25) documentos en apoyo a sus contenciones. Argumentaron, entre otras cosas, que el testador tácitamente condicionó el llamamiento de la señora Dorna González al hecho de que ésta continuara siendo su esposa, y que tal intención se desprende del lenguaje del testamento. Alegaron que el causante sujetó la designación de "su esposa, doña Flora Dorna" a una condición resolutoria, la cual se

cumplió una vez se divorciaron resultando el testamento <u>inejecutable o ineficaz</u>.[7]

El tribunal de instancia dictó sentencia sumaria a favor de la señora Dorna González, declarando válido el testamento. Cabe destacar que, <u>en sus determinaciones de hecho, dicho foro no hizo alusión a la voluntad del causante</u>. Trató la controversia en torno a la intención real del testador como una cuestión estríctamente de derecho. Tras un brevísimo análisis del testamento, resolvió:

1. que resultaba "<u>imposible</u>" concluir que del texto del testamento surja condición alguna;

2. que la última voluntad del señor Licari fue instituir como única y universal heredera a la señora Dorna González; y

3. que <u>el testamento del señor Licari era claro</u> sin que en el hubiesen áreas dudosas.

<u>El tribunal no hizo mención alguna ni analizó los otros documentos que fueron sometidos por las partes con sus respectivas mociones. Tampoco hizo referencia a los hechos no controvertidos que aparecen en la demanda jurada</u>.

Inconformes, las sobrinas demandantes presentaron primero una solicitud de reconsideración, y luego una moción en apoyo a la misma. En éstas, además de reafirmar su petición de que se dictase sentencia sumaria a su favor, solicitaron, en la alternativa, que se señalara vista para presentar prueba extrínseca sobre la voluntad real del causante al testar. El tribunal de instancia denegó ambas mociones.

---

[7] En la oposición a la moción de sentencia sumaria, la reconsideración y la posterior moción en apoyo a la reconsideración, las sobrinas demandantes clarificaron que no estaban cuestionando la validez del testamento en sí, ni el que éste no haya sido revocado. Su contención se reduce a que la señora Dorna González, al divorciarse, cumplió con la condición resolutoria establecida en el testamento. Esto inutilizó la institución de ésta como heredera e hizo el testamento inejecutable, por lo que procedía abrir la sucesión intestada. Como fundamento legal citan el Art. 875 del Código Civil, 31 L.P.R.A. Sec. 2591 (3). El citado artículo, en lo pertinente, dispone:

La sucesión legítima tiene lugar:

(1)     ...

(2)     ...

Insatisfechas con esta determinación, las sobrinas demandantes apelaron ante el Tribunal de Circuito. Solicitaron la revocación de la sentencia sumaria dictada y que se dictara sentencia sumaria a su favor. En la alternativa, pidieron que se devolviera el caso al foro instancia para la celebración de vista evidenciaria sobre la intención del causante al testar. Argumentaron que dicha vista serviría para dilucidar si la voluntad del causante al otorgar testamento fue sujetar la institución de la señora Dorna González como heredera a la condición de que continuara siendo su esposa. El Tribunal de Circuito rechazó tanto el planteamiento sustantivo **como el procesal**. Concluyó que "[e]n el caso de autos <u>surge claramente del testamento la voluntad</u> del Sr. Licari..."[8] <u>El foro apelativo tampoco analizó los múltiples documentos que obran en autos, ni parece haberle dado peso a los hechos que surgen de la demanda jurada.</u>

Descontentas con esta decisión, las sobrinas acudieron ante nos. La mayoría de este Tribunal hoy confirma la sentencia del Tribunal de Circuito. Por las razones que a continuación expresamos, disentimos.

II

La moción de sentencia sumaria es un mecanismo mediante el cual se le solicita al tribunal que dicte sentencia a base de los documentos que se acompañan con dicha moción y a los que obran en autos. Procede este tipo de sentencia únicamente cuando no existan hechos materiales en controversia. En otras palabras, el tribunal sólo debe dictar sentencia de forma sumaria en casos claros, cuando tenga ante si la verdad sobre todos los hechos pertinentes y determine que resulta innecesaria una vista evidenciaria. <u>Audio Visual Lang.</u> v. <u>Sist. Est. Natal Hnos.</u>, Op. de 15 de diciembre de 1997, 144 D.P.R. ___ (1997), 97 J.T.S. 147; <u>Mercado Vega</u> v. <u>U.P.R.</u>, 128 D.P.R. 273, 281 (1991); <u>Nassar</u>

---

(3)     Cuando falta la condición puesta a la institución de heredero...
[8] Véase la Sentencia del Tribunal de Circuito, pág. 10.

Rizek v. Hernández, 123 D.P.R. 360, 378 (1989); Corp. Presiding Bishop CJC of LDS v. Purcell, 117 D.P.R. 714 (1986).

Una vez presentada la moción de sentencia sumaria, la parte contraria puede defenderse de varias maneras. Puede someter contra documentos que controviertan algún hecho material. Puede argüir que, como cuestión de derecho, procede que se dicte sentencia sumaria a su favor. Regla 36.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III. También puede alegar que no procede que se dicte sentencia sumaria por no haberse avalado mediante documentos admisibles en evidencia todos los hechos materiales necesarios para resolver la controversia. Finalmente, puede aducir que, por su naturaleza, no es un caso que deba resolverse por sentencia sumaria. Los documentos que se toman en consideración son solo aquellos que son admisibles en evidencia ya que la moción y los documentos están sustituyendo la vista evidenciaria. Regla 36.5 de Procedimiento Civil, supra.

Al considerar una moción de sentencia sumaria el tribunal no dirime credibilidad. Roth v. Lugo, 87 D.P.R. 386, 394 (1963). Por el contrario, tiene que presumir como ciertos todos los hechos materiales no controvertidos que surjan de documentos admisibles en evidencia que acompañen la moción o su oposición y los que obran en autos. Una vez se controvierte algún hecho material con contra documentos, el tribunal viene obligado a denegar la moción y dirimir el conflicto en vista evidenciaria. En otras palabras, cuando existe una disputa "bona fide" de hechos entre las partes no procede dictar una sentencia sumaria. Valcourt Cuestell v. Tribunal Superior, 89 D.P.R. 827, 832 (1964); Roth v. Lugo, supra.

El mecanismo procesal de la sentencia sumaria es uno discrecional que solo debe concederse cuando la evidencia documental presentada sea suficiente y de ésta se desprenda con claridad que la vista evidenciaria es innecesaria. El promovente tiene que, además, establecer su derecho con entera claridad y debe demostrar que la otra parte no tiene derecho a reclamar bajo cualquier circunstancia que

resulte discernible de las alegaciones que no hayan sido refutadas por la evidencia presentada. Ríos v. Cidra Mfg. Oper. of P.R., Inc., Op. de 15 de junio de 1998, 145 D.P.R. ___ (1998), 98 J.T.S. 73.

La sentencia sumaria debe dictarse a favor de la parte a la cual le asista el derecho, independientemente de quien la haya solicitado. Sobre el particular, la Regla 36.3 de Procedimiento Civil, supra, señala que "[d]icha sentencia podrá dictarse a favor o en contra de cualquier parte en el pleito."·

En suma, la solicitud de sentencia sumaria se concederá exclusivamente en aquellos casos donde los hechos cardinales sean incuestionables y la controversia se reduzca a una estrictamente de derecho. A tenor con esta normativa hemos identificado cierto tipo de casos en los cuales, de ordinario, no debe dictarse sentencia de forma sumaria. Estos incluyen los pleitos que involucran determinaciones de negligencia, Lasanta Piñero v. Retto, Inc., 100 D.P.R. 694, 698 (1972); Vda. de Viera v. Tribunal Superior, 93 D.P.R. 503, 508 (1966), los que entrañan el dirimir el estado mental de una persona o una cuestión subjetiva y aquellos donde la determinación de credibilidad juegue un rol importante. Recientemente, en *Audiovisual Language*, supra, reiteramos que:

> Hay litigios y controversias que por su naturaleza no deben resolverse mediante sentencia sumaria, porque difícilmente en tales casos el tribunal puede reunir ante si toda la verdad de los hechos a través de documentos. Así ocurre con controversias centradas en elementos subjetivos....

El caso de autos se centra precisamente sobre el estado mental del causante, o sea, su intención al momento de testar. Es en torno a este hecho de tipo subjetivo que gira la controversia. La duda que surge de un minucioso análisis del testamento y demás documentos admisibles en evidencia presentados y que obran en autos, no debió dirimirse por el mecanismo de sentencia sumaria.

III

A continuación haremos una breve síntesis de los hechos no controvertidos según estos surgen de un análisis de la demanda jurada y de los documentos admisibles en evidencia presentados por las partes con sus respectivas mociones.

El 26 de agosto de 1958, Philip F. Licari y la señora Flora Dorna González contrajeron matrimonio. El 29 de noviembre de 1972, el señor Licari otorgó testamento abierto ante notario mediante el cual instituyó como heredera universal a la señora Dorna González que, en aquel momento, era su esposa. El señor Licari no tenía ascendiente o descendiente alguno. En el testamento hizo constar específicamente que todos los bienes que poseía eran de índole ganancial, e indicó que los bienes legados eran conocidos por su "actual esposa". Además, expresó que dichos bienes constaban en documentos que se guardaban en la residencia de ambos. El señor Licari finalmente hizo constar su deseo de que se evitase la intervención judicial para que sus familiares conservaran entre sí buenas relaciones de amistad y armonía. Al testar, su familia cercana constaba de sus sobrinas y su entonces esposa Dorna González.

Seis años después de otorgarse el testamento, el 17 de abril de 1978, el matrimonio entre el señor Licari y la señora Dorna González quedó disuelto por sentencia de divorcio. Una vez firme la sentencia de divorcio, entró en efecto un acuerdo mediante el cual se liquidó la sociedad de bienes gananciales constituida entre el señor Licari y la señora Dorna González. Transcurridos diecisiete (17) años del divorcio, el 12 de julio de 1995, falleció el señor Licari.

Al momento de fallecimiento el señor Licari tenía 88 años, llevaba diecisiete (17) años de soltero, sus parientes más cercanos eran sus dos sobrinas, y la totalidad de los bienes que poseía eran privativos.[9] La señora Dorna González, por su parte, ya había sido declarada

---

[9] Véase la Demanda, la cual fue jurada, la oposición a sentencia sumaria y solicitud para que se dicte sentencia sumaria a favor de las demandantes, así como los documentos que las acompañan.

judicialmente incapaz debido al avanzado estado de deterioro mental causado por su padecimiento de alzheimers.[10]

De los documentos sometidos, surge además que las sobrinas del señor Licari guardaban una estrecha relación con éste y que él les manifestó en repetidas ocasiones que ellas serían las herederas universales de todos sus bienes y que heredarían todo debido a que eran su única familia y no existía persona alguna que pudiera heredar sus bienes. [11] Además les indicó específicamente "que no tenía otorgado testamento válido alguno". [12] Ellas se ocuparon de su cuido y de pagar los gastos resultantes de su última enfermedad y del posterior funeral.[13]

IV

En el presente caso, surge como un hecho incontrovertible que el testamento implicado cumplió con todas las formalidades de ley y nunca fue revocado. La controversia real se reduce precisamente a una cuestión fundamental mixta de hecho y derecho, a saber, **la voluntad real del causante al momento de testar**. ¿Deseaba el causante que la señora Dorna González heredase la totalidad de su caudal independientemente de que continuara siendo su esposa? o, por el contrario, ¿Quiso el señor Licari instituirla como única y universal heredera mientras continuara siendo su esposa y por el hecho de ser los bienes legados gananciales? ¿Estaba sujeto el llamamiento a estas condiciones?

El tribunal de instancia, el Tribunal de Circuito y la mayoría de este Tribunal equivocadamente adoptan la posición de que la letra del

---

[10] La señora Dorna González falleció a principios de octubre de 1998 y fue sustituida en el presente pleito por su sucesión. Dicha sustitución fue aceptada por este Tribunal el 12 de marzo de 1999. Resulta irónico que el sobrino de la difunta, el Sr. José Manuel Náter Dorna, quien compareció al inicio del presente pleito como su tutor y quien no tenía relación familiar alguna con el señor Licari, será una de las personas que terminará heredándolo, de acuerdo con la decisión de la mayoría.

[11] Véase, Deposición de Josephine Crocifissa Licari, págs. 27-33. Véanse, además, los documentos mencionados en la nota al calce número 1.

[12] Véase la alegación número once (11) de la demanda jurada y la oposición a solicitud de sentencia sumaria, a la pág. 9.

[13] Las sobrinas acompañaban al causante a reuniones, visitas y actividades familiares.

testamento es clara y que de ésta se desprende que la voluntad del señor Licari fue instituir a la señora Dorna González como única heredera de forma incondicional. No podemos estar de acuerdo. El lenguaje utilizado en el testamento se presta a más de una interpretación. Más aún, los hechos avalados por los documentos reflejan, que la intención del causante aparenta, *prima facie*, ser la alegada por las demandantes peticionarias, no la que asevera la mayoría. Veamos.

En lo pertinente el testamento dispone:

"...SEGUNDO: Declara el testador que esta casado con doña Flora Dorna y que en dicho matrimonio no ha procreado hijos. Que no tiene descendientes [sic] alguno ni en la actualidad tampoco tiene ascendientes, y hace constar además el testador:

A. Que casó [sic] con **su actual esposa** doña Flora Dorna el día veintiseis de agosto de mil novecientos cincuenta y ocho y que todos los bienes que posee son de índole ganancial y los mismos son conocidos de **su esposa** y cuyos bienes aparecen de sus libros de cuenta, escrituras y otros documentos que guardan en su residencia.

TERCERO: Que es su deseo que todo lo que se relacione con sus funerales y el entierro de su cadáver sea dispuesto por **su esposa** y del modo que ella estime más conveniente.

CUARTO: Por el presente testamento, el testador instituye, nombra y elige como su única y universal heredera, para todos sus bienes, derechos y acciones, después de pagadas y satisfechas sus deudas a **su esposa**, doña Flora Dorna.

QUINTO: Para cumplimentar lo que deja dispuesto el testador, éste nombra como su albacea testamentario a **su esposa** doña Flora Dorna, con relevo de la necesidad de prestar fianza y concediendo todas las facultades necesarias para que proceda , llegado el momento, a inventariar sus bienes para su liquidación, partición, división y adjudicación haciendo y gestionando lo necesario hasta dejar terminada su testamentaría y le concede además las siguientes facultades...

SEXTO: Es el deseo ferviente del testador que se evite la intervención judicial, fuera de las gestiones imprescindibles de índole testamentaria, en lo relacionado con su testamento, todo en ahorro de gastos y para que **sus familiares** conserven entre sí buenas relaciones de amistad y armonía. (Énfasis suplido.)

Como se puede apreciar, el señor Licari en todo momento califica a señora Dorna González como su esposa. En ninguna parte del testamento la llama exclusivamente por su nombre, es más, en algunas

cláusulas se refiere a ella meramente como "su esposa", sin mención de su nombre. Resulta significativo también, que al identificar los bienes que formarían el caudal, el testador expresa que todo lo que posee es ganancial y que los mismos son "conocidos de **su esposa**". Además indica donde aparecen dichos bienes, esto es, "de sus libros de cuenta, escrituras y otros documentos que guardan en su residencia", refiriéndose obviamente a la residencia conyugal.

La mayoría, interpreta la cláusula sexta en apoyo de la incondicionalidad del llamamiento a la señora Dorna González. Nosotros, sin embargo, entendemos esta refleja todo lo contrario. El hecho de mencionar su deseo de evitar pleitos a sus "familiares" refuerza la interpretación planteada por las sobrinas, ya que desde el momento en que la sentencia de divorcio advino a ser final y firme, la señora Dorna González cesó de tener vínculo familiar alguno con el señor Licari. Al morir éste, hacía ya más de diecisiete años que ella había cesado de formar parte de su familia.

El reiterado uso de un lenguaje tan específico en el testamento debió, cuando menos, arrojar dudas sobre la intención del testador. Ahora bien, cabe preguntarse, ¿Por qué el señor Licari, siendo abogado, no revocó su testamento, si todas las circunstancias expresadas en él desaparecieron tras su divorcio?

La mayoría, el Tribunal de Circuito y el foro de instancia, al interpretar el testamento, hacen hincapié en el hecho de que el señor Licari era abogado admitido a ejercer la profesión aquí en Puerto Rico. De este hecho aislado y escueto **infieren** que éste sabía que el mero divorcio no invalidaba la institución de herederos que había hecho, ni el testamento previamente otorgado. Para llegar a ésta conclusión, sin embargo, no toman en consideración la declaración bajo juramento hecha en la deposición tomada a la sobrina Josephine Crosifissa Licari, en la cual ésta expresa que su tío había estudiado derecho en los Estados Unidos. En dicha deposición la sobrina señaló además que el causante les había indicado a ella y a su hermana en reiteradas ocasiones que ellas serían las únicas herederas de todos sus bienes, pues no existía persona alguna que pudiera heredarle ya que no tenía testamento vigente alguno.

El hecho de que el señor Licari fuera abogado no excluye, de por sí, la posibilidad de que éste entendiera, tanto al momento de testar,

como al hablar posteriormente con sus sobrinas, que no era necesario otorgar un nuevo testamento o anular el previamente otorgado para eliminar a la señora Dorna González como su universal heredera. Ciertamente, resulta factible que el señor Licari instituyera a su entonces esposa, la señora Dorna González, como su heredera universal en el testamento, precisamente por ser ésta su esposa en esos momentos y solo mientras permaneciera como tal.

Recordemos que el señor Licari era un abogado estadounidense, formado en una tradición jurídica donde, como regla general, la validez de las disposiciones testamentarias a favor de un cónyuge cesan con el divorcio. Véase el Código Modelo de Derecho Sucesoral de Estados Unidos, UNIF. PROBATE CODE §2-508, 8 U.L.A. 376 (1998). Concordamos en que la formación jurídica del causante resulta irrelevante a la hora de precisar las normas de derecho aplicables. Sin embargo, la cultura jurídica del causante es un factor importante para determinar lo que pensaba al momento de testar, y por tanto, cuál fue su intención real. Tomando lo anterior en consideración, resulta factible que el testador deseara condicionar su designación a las particulares cualidades que poseían tanto la señora Dorna González como los bienes que formarían el caudal al momento de testar.

Indiscutiblemente, como abogado, el señor Licari debió haber reconocido que la mejor forma de invalidar los efectos de un testamento ambiguo como este, era revocándolo. No obstante, no podemos olvidar que el señor Licari, además de ser abogado, era un ser humano como cualquier otro y que la mayoría de nosotros, abogados o no, tendemos a evitar todo tramite relacionado con nuestra propia muerte. En todo caso, si el causante estaba convencido de que había sujetado la designación de la señora Dorna González a una condición resolutoria, y que al divorciarse dicha condición se cumplió, también es obvio que estaba bajo la creencia de que la revocación resultaba técnicamente innecesaria. El cumplimiento de la condición resolutoria dejaba sin efecto la institución de la señora Dorna González como heredera,

procediendo entonces la sucesión intestada en la cual las únicas herederas eran sus sobrinas.

En el presente caso, debe tenerse bien presente que, al resolver una moción de sentencia sumaria, una inferencia no puede prevalecer sobre una declaración jurada no controvertida; y que el tribunal no puede dirimir credibilidad. Tiene, por lo tanto, que presumir cierto lo declarado bajo juramento por las sobrinas y entender que el hecho inferido, esto es, la intención de instituir a la señora Dorna González como heredera universal de forma incondicional, fue controvertido. De cualquier manera, lo que procedía en el caso de autos era denegar la solicitud de sentencia sumaria y proceder a celebrar una vista evidenciaria.

Determinar la intención del testador es una cuestión mixta de hecho y de derecho, no una pura de derecho como parece entender el tribunal de instancia. Es quizás la cuestión de hecho más importante en un caso como el presente donde se pretende interpretar un testamento. En cuanto a la función del juzgador de instancia al interpretar testamentos, el Tribunal Supremo de España dictaminó recientemente:

> La labor hermenéutica de todo testamento (o de alguna de sus cláusulas) ha de consistir, precisamente, en tratar de conocer la verdadera voluntad del testador, la cual, una vez que sea averiguada, ha de prevalecer incluso sobre el tenor literal de las palabras utilizadas en el testamento (o en la cláusula respectiva), en caso de discrepancia entre aquélla y éstas. Sentencia d 18 de julio de 1998, Aranzadi 6388. (Énfasis suplido.)

En la citada sentencia, el alto foro español rechazó la interpretación que de un testamento hicieran tanto el Juzgado de Primera Instancia como la Audiencia Provincial "por conducir la misma a conclusiones ilógicas y, por tanto, contrarias a la verdadera voluntad del testador".

En vista de que existe duda razonable sobre la intención real del señor Licari al otorgar su testamento, erró el foro de instancia al resolver la controversia mediante el mecanismo de la sentencia sumaria.

El foro de instancia debió celebrar vista evidenciaria donde recibiera prueba extrínseca para determinar si la voluntad real del causante al momento de otorgar el testamento fue sujetar la designación de la señora Dorna González a una condición resolutoria o si por el contrario, el señor Licari quiso hacer un llamamiento incondicional. También erró el Tribunal de Circuito al confirmar la sentencia de instancia.

Por todo lo antes expuesto, disentimos del curso de acción adoptado por la mayoría. Entendemos que lo que procede es revocar las determinaciones del Tribunal de Circuito y del Tribunal de Primera Instancia y devolver el caso a dicho foro para la celebración de la correspondiente vista evidenciaria.


Miriam Naveira de Rodón
Juez Asociada