Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel VIII

| | | |
|---|---|---|
| *EX PARTE*:<br><br>GABRIEL ERNESTO MÉNDEZ CERAME, LILLIAM LISSETTE SÁNCHEZ<br><br>Apelantes | KLAN202500019 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de Utuado<br><br>Caso Núm. AD2024CV00200<br><br>Sobre: Adveración de Testamento en Peligro Inminente de Muerte (Causante: Julio Méndez Muñoz) |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Adames Soto, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 28 de febrero de 2025.

Comparece el Sr. Gabriel Ernesto Méndez Cerame (señor Méndez Cerame) y la Sra. Lilliam Lissette Sánchez Benítez (señora Sánchez Benítez), (en conjunto, parte apelante) mediante recurso de *Apelación* solicitando la revocación de una *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Utuado, (TPI), el 20 de noviembre de 2024. Mediante dicho dictamen el foro primario declaró *No Ha Lugar* la *Petición* sobre adveración de testamento en peligro inminente de muerte presentada por los apelantes.

Examinados los asuntos que tuvo ante su atención el foro apelado, decidimos *confirmar*.

## I. Resumen del tracto procesal

El 9 de octubre de 2024 el señor Méndez Cerame y la señora Sánchez Benítez, hijo y viuda, respectivamente, del Sr. Julio Méndez Muñoz (señor Méndez Muñoz o causante) presentaron una *Petición* ante el TPI para adverar

y protocolizar el testamento en peligro inminente de muerte de este último. En suma, alegaron que el señor Méndez Muñoz falleció el 11 de julio de 2024, en Adjuntas, Puerto Rico. Sostuvieron, además, que, durante sus últimos meses de vida el causante padeció de colangiocarcinoma, un cáncer agresivo de los ductos biliales dentro del hígado y que, como producto de dicha enfermedad, se tuvo que someter a múltiples procedimientos quirúrgicos de alto riesgo, los cuales, por sí solos, podían haber resultado en su deceso. Sostuvieron que, ante la inminencia de su deceso, el señor Méndez Muñoz otorgó un Testamento en Peligro Inminente de Muerte (Testamento) el 25 de abril de 2024, en Manatí, Puerto Rico, el cual acompañaron con su *Petición.*

En dicho Testamento, el causante distribuyó sus activos entre sus tres hijos, –el co-apelante Sr. Gabriel Ernesto Méndez Cerame, el Sr. Víctor Julio Méndez Cerame y la Sra. Andrea Victoria Méndez Cerame– y su viuda, la co-apelante Sra. Lilliam Lissette Sánchez Benítez, además de ciertas adjudicaciones de bienes particulares a estos herederos y/o a terceros. Asimismo, instituyó a la parte apelante y al Sr. Daniel Julián Méndez Muñoz, su hermano, como sus albaceas testamentarios.

Cabe resaltar que, en la referida *Petición*, la parte apelante identificó a las siguientes personas como aquellas que fungieron como testigos de la última voluntad del señor Méndez Muñoz:

a. DANIEL JULIÁN MÉNDEZ MUÑOZ, hermano del causante, hoy día mayor de edad, casado, retirado y vecino de Dorado, Puerto Rico;
b. GABRIEL ERNESTO MÉNDEZ CERAME, hijo del causante, hoy día mayor de edad, soltero, director y vecino de Miami, Florida, Estados Unidos de América; y
c. LILLIAM LISSETTE SÁNCHEZ BENÍTEZ, viuda del causante, hoy día mayor de edad, soltera por viudez y vecina de Adjuntas, Puerto Rico.

Por último, la parte apelante le solicitó al TPI que: utilizara el procedimiento para Testamentos Especiales establecido en los Artículos 1655 a 1658 del Código Civil de Puerto Rico; señalara vista para la lectura pública del Testamento en Peligro Inminente de Muerte y; declarara adverado

el testamento otorgado en estado inminente de peligro de muerte, ordenando entonces su protocolización.

Ante ello, el 15 de octubre de 2024, el foro primario emitió una *Orden* requiriendo a la parte apelante que expusiera los fundamentos por los cuales se debía llevar a cabo el proceso de protocolización del testamento, a pesar de no haber sido escrito a mano por el causante.

En respuesta, el 24 de octubre de 2024, la parte apelante presentó una *Moción en cumplimiento de orden del 15 de octubre de 2024 y aclaratoria*. Esgrimió que su solicitud era a los fines de que se adverara el testamento en peligro inminente de muerte, siguiendo el procedimiento para Testamentos Especiales establecido en los Artículos 1655 a 1658 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 11291, el cual no requería que el documento fuera redactado a puño y letra por el testador.

Es así como, el 20 de noviembre de 2024, el TPI emitió la *Resolución* cuya revocación nos solicita la parte apelante, declarando *No Ha Lugar* la *Petición* instada por la parte apelante, al juzgar que el testamento en peligro inminente de muerte otorgado por el señor Méndez Muñoz contenía un defecto de fondo insubsanable que acarreaba su nulidad. En específico, fundamentándose el artículo 1642 del Código Civil de Puerto Rico, *supra*, el foro apelado dispuso lo siguiente:

> De las alegaciones de la petición y de la evidencia anejada surge que los tres (3) testigos fueron: Gabriel Ernesto Méndez Cerame, Lissette Sánchez Benítez y Daniel Julián Méndez Muñoz. El señor Gabriel Ernesto Méndez Cerame es hijo del causante y heredero instituido en el testamento y la señora Lissette Sánchez Benítez es la viuda del causante y heredera instituida en el testamento cuya adveración y protocolización se solicita a este Honorable Tribunal. De igual manera, el señor Daniel Julián Méndez Muñoz, hermano del causante y tío de Gabriel Ernesto Méndez Cerame, Víctor Julio Méndez Cerame y Andrea Victoria Méndez Cerame, se encuentra dentro de una prohibición para ser testigo ya que es pariente en tercer grado de consanguinidad de los hijos del causante instituidos como herederos en el testamento. Como es sabido, la concurrencia de tres testigos idóneos en el testamento en peligro inminente de muerte, según los parámetros establecidos en el Código Civil de Puerto Rico, se trata de un requisito esencial e imprescindible para garantizar la autenticidad y la veracidad de la declaración de la voluntad del testador. Por tanto, este Tribunal está

impedido de llevar [a] cabo un proceso de adveración y protocolización de un documento nulo por disposición expresa de ley.

En desacuerdo, el 5 de diciembre de 2024, la parte apelante solicitó la reconsideración del referido dictamen. En síntesis, arguyó que el testamento en inminente peligro de muerte tiene solo dos requisitos para su validez: 1) que el testador se encuentre en peligro inminente de muerte; 2) que concurran tres personas mayores de edad a la voluntad del testador. Por lo cual, al identificarse tres (3) personas mayores de edad que podían testificar sobre la voluntad del señor Méndez Muñoz y sobre los elementos para la validez del testamento en inminente peligro de muerte autorizado por este, el testamento era válido y debían continuar los procedimientos.

El 9 de diciembre de 2024, el TPI declaró *No Ha Lugar* la solicitud de reconsideración.

Inconforme, el 8 de enero de 2025, la parte apelante compareció ante este foro intermedio mediante recurso de *Apelación* en el cual señaló los siguientes errores:

A. Erró el TPI al determinar que el Testamento en Peligro inminente de Muerte autorizado por el causante Julio Francisco Méndez Muñoz no cumplía con los elementos requeridos en nuestro ordenamiento para dicho testamento especial, al no concurrir tres (3) testigos idóneos en la otorgación del mismo.
B. Erró el TPI al determinar que el Testamento en Peligro Inminente de Muerte autorizado por el Causante Julio Francisco Méndez Muñoz adolecía de un defecto de fondo no subsanable que acarrea la nulidad del mismo.
C. Erró el TPI al determinar que un testamento otorgado en peligro inminente de muerte requiere la comparecencia de tres (3) testigos idóneos, cuando el Código Civil vigente requiere únicamente que los testigos sean mayores de edad.

El 10 de febrero de 2025 el Gobierno de Puerto Rico, a través de la Oficina del Procurador General, presentó una *Comparecencia Especial y Solicitud de Relevo de Resolución* donde adujo que su comparecencia no era requerida y solicitó ser relevado.

Nos encontramos en posición de resolver.

**II. Exposición de derecho**

    a. Hermenéutica

La hermenéutica legal es el proceso de interpretar las leyes; es decir, auscultar, averiguar, precisar y determinar cuál ha sido la voluntad legislativa. *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 717, 738 (2012). Este método de interpretación se utiliza, no solamente en la interpretación de estatutos, sino también, en la de los contratos, testamentos, reglamentos administrativos y cualquier otro documento. *Íd.*; R. Elfren Bernier y J. Cuevas Segarra, Aprobación e Interpretación de las Leyes en Puerto Rico, 2da ed. rev., San Juan, Pubs. JTS, 1987, Vol. I, pág. 241.

Los tribunales tienen la facultad de interpretar las leyes cuando no son claras o concluyentes sobre un punto particular; cuando es necesario suplir una laguna en el estatuto, o cuando la justicia lo requiera para mitigar los efectos adversos de la aplicación de una ley. *Brau, Linares v. ELA et al.*, 190 DPR 315, 340 (2014) citando a *Pueblo v. Ortega Santiago*, 125 DPR 203, 214 (1990). El juzgador, al sumergirse en esta tarea, debe cerciorarse que se descubra y haga cumplir la verdadera intención y deseo del poder legislativo. *IFCO Recycling v. Aut. Desp. Sólidos*, supra, citando a Elfren Bernier y Cuevas Segarra, op. cit., pág. 242. Así, pues, la aplicación justa de la norma legal requiere del juez gran ponderación, profunda sabiduría y vuelo imaginativo. Para ello, es deber del juez escrutar las palabras de la ley para encontrar el propósito que se propone. Además, el juez debe hurgar la prueba para descubrir elementos que se niegan a salir a flote y que demuestren lo acontecido realmente y escudriñar las controversias hasta comprender su verdadero origen. Es importante que lo que se produzca sea "una solución que sea cónsona con la idea animadora del derecho, que es la justicia". Elfren Bernier y Cuevas Segarra, op. cit., pág. 288.

Nuestro Código Civil de Puerto Rico "contiene una serie de disposiciones dirigidas a guiar el análisis e interpretación correcta de las leyes". *IFCO Recycling v. Aut. Desp. Sólidos*, supra, pág. 739. Una de las

reglas de hermenéutica legal que surgen del Código es: "[c]uando la ley es clara y libre de toda ambigüedad, su texto no debe menospreciarse bajo el pretexto de cumplir su espíritu". Art. 19 del Código Civil de 2020, Ley Núm. 55-2020, 31 LPRA sec. 5341. Véase, además, *Romero, Valentín v. Cruz, CEE et al.*, 205 DPR 972, 992 (2020).

b. Testamento en Peligro Inminente de Muerte

i.

El testamento es definido en el Art. 1639 del Código Civil, 31 LPRA sec. 11251 como un "negocio jurídico solemne, personalísimo, unilateral y esencialmente revocable mediante el cual una persona natural dispone, total o parcialmente, el destino de sus bienes para después de su muerte y ordena su propia sucesión dentro de los límites y las formalidades que señala la ley". Véase, además, *Sucn. Caragol v. Registradora*, 174 DPR 74, 83-84 (2008). El mismo, es considerado un negocio jurídico que tiene su médula en la voluntad declarada a través de las formalidades y solemnidades impuestas por la ley. *Licari v. Dorna*, 148 DPR 453 (1999); *Moreda v. Roselli*, 150 DPR 473 (2000), citando a L. Díez Picazo y A. Gullón, Sistema de Derecho Civil, Madrid, Ed. Tecnos, 1982, Vol. IV, pág. 460.

En cuanto a dichas solemnidades, el Art. 1642, 31 LPRA sec. 11254, dispone que **no podrán actuar como testigos <u>en ninguna clase de testamento</u>**:

> (a) las personas incapacitadas; (b) las personas que no pueden leer o no pueden firmar; (c) las personas que resultan favorecidas en alguna disposición testamentaria; (d) los parientes del heredero o legatario instituido dentro del cuarto grado de consanguinidad y segundo de afinidad; y (e) las personas convictas de delito que implica perjurio o fraude. (Énfasis y subrayado provistos). *Íd.*

El propio Código Civil, en su Art. 1643, 31 LPRA sec. 11261, establece cuáles son esas **clases de testamentos:** los comunes, abierto y ológrafo, y los especiales, en peligro inminente de muerte y en caso de epidemia. Además, cabe resaltar que el aludido Artículo 1642, *supra*, forma parte del primer Capítulo del Título IV, el cual **reúne las disposiciones *generales* de**

**la sucesión testamentaria**. Entonces, al posicionarse al inicio de las regulaciones de la sucesión testamentaria cabe entender que **el Art. 1642, *supra*, es de aplicación general a todas las formas testamentarias, incluyendo a los testamentos especiales como aquel otorgado en peligro inminente de muerte**, salvo que haya alguna disposición que exprese lo contrario o que su contenido sea incompatible con este.

Una vez claramente establecido lo anterior, (que resulta determinante para dirimir la controversia del caso ante nosotros), entonces procede ocuparnos de los testamentos especiales, entre los cuales, en lo que concierne, en el Art. 1655, 31 LPRA sec. 11291, se establece que:

> Cuando el testador se halla en peligro inminente de muerte, puede otorgar testamento ante tres (3) testigos mayores de edad.
>
> En caso de epidemia declarada por las autoridades sanitarias, el testador puede otorgar testamento ante tres (3) testigos que hayan cumplido dieciséis (16) años de edad.
>
> En ambos casos los testigos se asegurarán de que, a su juicio, el testador tiene la capacidad necesaria para hacer testamento. *Íd*. (Énfasis provisto).

Como se puede notar de la lectura del primer párrafo del Artículo citado, el Legislador decidió **no** exceptuar al testamento en inminente peligro de muerte de los requisitos que impone el Art. 1642, 31 LPRA sec. 11254, al referirse a los testigos que intervengan en cualquier testamento, según ya discutimos. En oposición, véase que el segundo párrafo del Art. 1655, *supra*, sí provee una excepción a la incapacidad de los testigos en los testamentos en caso de epidemia, al manifestar que el testador puede otorgar testamento ante tres (3) testigos que hayan cumplido dieciséis (16) años.

Dicho lo anterior, que resulta dispositivo de la controversia ante nosotros, valga apuntar que el primer párrafo del Art. 1655, *supra*, contrasta con el derogado Artículo 650 del Código Civil de 1930, 31 LPRA sec. 2187, de dos maneras. Primero, este último establecía que "[s]i el testador se hallare en peligro inminente de muerte, puede otorgarse el testamento ante **cinco (5) testigos idóneos** sin necesidad de notario". (Énfasis provisto). Es

decir, se redujo el número de testigos, de cinco a tres, que deben comparecer al otorgamiento de un testamento en peligro inminente de muerte. Segundo, el Legislador omitió la palabra "idóneo" en el Artículo vigente. De aquí que la parte apelante levante la interrogante sobre si los tres testigos que tienen que intervenir en el testamento en peligro inminente de muerte deben ser *idóneos,* según tal concepto era entendido bajo el Código Civil derogado, o si ello implica una excepción implícita a la regla sobre la prohibición general de los testigos estatuida en el Art. 1642*, supra.* Sin embargo, como ya adelantamos, al testamento en inminente peligro de muerte bajo el Código Civil de 2020 le resultan aplicables las prohibiciones contenidas en el Art. 1642, *supra,* que identifica quiénes no podrán actuar como testigos en ninguna clase de testamento.

## III. Aplicación del derecho a los hechos

Según esbozamos en la introducción, la parte apelante nos solicita que revoquemos el *No Ha Lugar* del TPI a su *Petición* sobre adveración del testamento en peligro inminente de muerte, otorgado por el señor Méndez Muñoz, bajo el fundamento de que no se cumplió con el requisito de la concurrencia de tres testigos idóneos, a tenor con el Código Civil de Puerto Rico de 2020, *supra.* En concreto, el foro primario juzgó que la comparecencia de los tres testigos del testamento, señor Méndez Cerame, hijo del causante, señora Sánchez Benítez, viuda del causante y el señor Daniel Julián Méndez Muñoz, hermano del causante, vulneró la norma sobre las prohibiciones generales de los testigos estatuida en el Art. 1642, *supra,* el cual aplica a todos los testamentos. Por lo cual, el foro de instancia decretó la nulidad del testamento.

En contraste, la parte apelante arguye que cumplió con los tres testigos mayores de edad requeridos por el Art. 1655, *supra,* puesto que, en el caso particular del testamento en peligro inminente de muerte, el nuevo Código Civil de 2020 no requiere que estos sean idóneos.

Aunque en este punto ya resulta reiterativo, el Art. 1642 del Código Civil de 2020, *supra,* recoge las prohibiciones generales de los testigos **que aplica a todos los testamentos, incluyendo el otorgado mientras el testador se encuentra en peligro inminente de muerte**. En este sentido, el Legislador no incluyó un eximente para el testamento en peligro inminente de las prohibiciones que estableció en el Art. 1642, que fueron las siguientes:

> (a) las personas incapacitadas; (b) las personas que no pueden leer o no pueden firmar; (c) las personas que resultan favorecidas en alguna disposición testamentaria; **(d) los parientes del heredero o legatario instituido dentro del cuarto grado de consanguinidad y segundo de afinidad;** y (e) las personas convictas de delito que implica perjurio o fraude. *Íd.* (Énfasis provisto).

**Así pues, este Artículo suplanta la alegada falta del requisito de idoneidad de testigos del Art. 1655, *supra*, por una regla de aplicación uniforme a todas las clases de testamento reconocidas por nuestro ordenamiento**. Este último dispone, en lo pertinente, que "[c]uando el testador se halla en peligro inminente de muerte, puede otorgar testamento ante tres (3) testigos mayores de edad". Art. 1655, *supra*.

A partir de ello, cabe coincidir con el foro de instancia en cuanto a que "[a]l disponer "tres personas mayores de edad" el propio [C]ódigo nos suple la norma que complementa ese [A]rtículo de donde surge que no puede ser cualquier persona mayor de edad, sino que esta debe ser idónea". ***Idónea* en este sentido refiere a la admonición que el Legislador introdujo en el Código Civil de 2020 a los efectos de que *no podrán actuar como testigos en ninguna clase de testamento*** (léase el testamento en inminente peligro de muerte, inclusive)**, según los allí expresamente descritos.** Artículo 1642 del Código Civil de 2020, *supra*.

Asimismo, nos resulta acertadas las expresiones del foro apelado sobre las posibles repercusiones de no aplicar Artículo 1642 del Código Civil de 2020 en el contexto de los testamentos en inminente peligro de muerte, en el sentido de que implicaría, por ejemplo, que las personas incapacitadas pudiesen testar, pues los testigos juegan un rol crucial en el testamento en

peligro inminente de muerte. Este testamento en particular es uno que, por sí mismo, carece de formalidades, por su carácter excepcional, y ello ha conllevado que nuestro Tribunal Supremo lo evalúe con suspicacia denegando su protocolización por haberse incurrido en violaciones a los requerimientos de ley o, sencillamente, porque el tribunal no pudo dar crédito al testimonio de los testigos en el correspondiente procedimiento judicial de adveración. González Tejera, *Derecho de Sucesiones*, San Juan, Ed. UPR, 2002, T. II, págs. 214-215.

Dicho lo anterior, la parte apelante alega que los tres (3) testigos que comparecieron al otorgamiento del testamento del señor Julio Méndez Muñoz fueron los siguientes: el Sr. Gabriel Ernesto Méndez Cerame, hijo del causante y heredero instituido en el testamento; Lissette Sánchez Benítez, viuda del causante y heredera instituida en el testamento, y Daniel Julián Méndez Muñoz, hermano del causante (este último fue el único que firmó el testamento). No obstante, el señor Méndez Cerame y la señora Sánchez Benítez se encuentran bajo la prohibición del Art. 1642 (c), *supra*, **al ser personas que resultan favorecidas en el testamento**. Por su parte, el señor Daniel Julián Méndez Muñoz también se encuentra bajo la prohibición del Art. 1642 (d), *supra*, **por ser pariente en tercer grado de consanguinidad de los hijos del causante instituidos como herederos en el testamento**. Es decir, los tres testigos del testamento en inminente peligro de muerte otorgado por el señor Méndez Muñoz resultan excluidos como testigos, por virtud de la prohibición general que sobre algunos testigos establece el Art. 1642 del Código Civil, *supra.* Esta prohibición general discutida, extensible a los testamentos en inminente peligro de muerte, continúa con la muy marcada trayectoria legislativa de velar por el interés de que algunos posibles *testigos*, (familiares, personas con intereses en el resultado del testamento), no se aprovechen de la situación tan sensitiva que puede provocar el lecho de muerte para adelantar sus propósitos, que muy bien pudieran estar alejados de la verdadera voluntad del testador.

**IV. Parte dispositiva**

Por los fundamentos que anteceden, los que hacemos formar parte de este dictamen, *confirmamos* la *Resolución* emitida por el Tribunal de Primera Instancia.

Lo acordó y manda el Tribunal y lo certifica su Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones